715 So.2d 944 (1998)
Derrick CUMMINGS, Appellant,
v.
STATE of Florida, Appellee.
No. 86413.
Supreme Court of Florida.
June 11, 1998.
Rehearing Denied August 17, 1998.
*946 Jeanine B. Sasser, Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Derrick Cummings. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Cummings was charged with first-degree murder for the shooting death of Shelton Lucas, Jr. The evidence introduced at trial revealed the following facts. On the evening of February 15, 1994, Karlon "Dap" Johnson yelled at Andre Fisher to turn on the lights of his car and slow down as he drove down a street in Jacksonville. Fisher got out of his car and a fight ensued between Johnson and Fisher. Johnson hit Fisher in the head with a beer bottle. Justin Robinson interceded to break up the dispute and convinced Fisher to leave. Robinson testified that Fisher resisted leaving the scene.
After the fight, someone contacted Fisher's nephew Derrick Cummings by phone and told him about the fight between Fisher and Johnson. Michael Gardner, Cummings' companion at the time he received the call and learned about the fight, testified that Cummings was upset by this information and asked Gardner to drive him to get his gun. Gardner also testified that he dropped Cummings off at the house where Fisher lived. Sometime after the fight, Robinson saw Cummings in a burgundy car with an "Uzi-type gun" on his lap. Cummings asked about the fight and inquired as to Johnson's whereabouts.
Later that evening, a white Honda Accord drove by the house where Johnson's sister Charlsie Lucas and her children lived. Johnson stayed at his sister's house several nights each week; Johnson's car, which apparently was quite distinctive, was also parked in the carport of his sister's house. Shelton Lucas, Sr., Johnson's brother-in-law, was smoking a cigarette in the carport when he noticed the car driving down the street. Lucas Sr. is the same height and weight as Johnson and was wearing clothes similar to those worn by Johnson earlier that evening. After Lucas Sr. reentered the house from the carport through the kitchen door, he heard what sounded like firecrackers. The passengers in the car fired at least thirty-five shots at the house from three different nine millimeter guns, a Glock, a Luger, and an Uzi. Several bullets penetrated the kitchen door. One of the bullets traveled through the kitchen into the living room and struck five-year-old Shelton Lucas, Jr., who was sleeping on a couch with his mother. The next day the child died from this wound.
Robinson testified that the white Honda Accord passed him shortly before the shooting. There were four people in the car, and he recognized Fisher in the front passenger seat. He watched the car go along the street and turn right at the house where Johnson's sister lived.[1] Shortly thereafter Robinson heard shots being fired. Robinson further testified that the car in question was Marion King's car. The following day Cummings told Robinson that, if the police asked him, he should say that they were together the previous evening at his cousin's house.
The police recovered an unloaded Glock pistol from the apartment of Cummings' girlfriend which had Cummings' fingerprints on it. The girlfriend denied any knowledge of the gun. The bullet that struck the child was consistent with having been fired from a Glock pistol but the state's expert was unable *947 to say if it was fired from the pistol with Cummings' fingerprints.
Police arrested four suspects (Andre Fisher, Derrick Cummings, Marion King, and Kevin Dixon) and charged them with second-degree murder and shooting or throwing deadly missiles. King gave a sworn statement as part of a negotiated plea to second-degree murder. King said that he drove Cummings, Fisher, and Dixon to the scene but that he did not carry his gun and did not participate in the shooting. The Duval County grand jury indicted Cummings, Fisher, and Dixon for premeditated first-degree murder.
Shortly before trial was to begin, the public defender representing Dixon informed the court that ballistics tests established that three shell casings found at the scene had been fired from King's gun, proving that King had lied about his gun not being used in the shooting. The State filed a nolle prosequi as to the charge against Dixon because King's testimony was the only evidence placing Dixon at the scene.
Cummings and Fisher were tried during the same proceeding but before separate juries. The State did not present King's testimony at the trial. Cummings was convicted of first-degree premeditated murder and the jury recommended the death penalty by a vote of ten to two.[2] The judge followed the jury's recommendation and imposed the death penalty. The judge found three aggravating circumstances: Cummings knowingly created a great risk of death to many persons; the murder was committed while Cummings was engaged in a burglary; and the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). § 921.141(5)(b), (c), (d), (i), Fla. Stat. (1995). The judge found no mitigating circumstances.
Cummings presents eleven claims in this appeal: (1) it was error not to dismiss the indictment because of perjured grand jury testimony; (2) it was error to refuse to excuse the jury foreman for cause; (3) it was error to admit Cummings' profane response to being told a child was killed in the shooting; (4) it was error not to allow testimony that Cummings knew Johnson carried a gun; (5) it was error to find as an aggravator that Cummings knowingly created a great risk of death to many persons; (6) it was error to find the CCP aggravator; (7) the death penalty is disproportionate here; (8) it was error to admit victim impact evidence without limitation and without an instruction that it is not to be used as an aggravator; (9) it was an abuse of discretion not to give credibility to nonstatutory mitigation; (10) it was error to find as an aggravator that the felony was committed during a burglary; and (11) it was error not to grant a judgment of acquittal.
We find no merit to Cummings' first argument, that it was error not to dismiss the indictment because of "perjured" grand jury testimony. Cummings argues that the detective appearing before the grand jury testified about a statement made by Marion King, who was discredited at trial because he was not believable, and that this testimony resulted in Cummings' indictment. King had told Detective Dale Gilbreath that as the car containing him, Cummings, and the others approached the house where they thought Johnson was, Cummings saw a figure in the carport and said, "There he is." The State argues that there was no question as to King's credibility when the evidence was presented; any concerns arose afterward, at trial. The State possessed other evidence from which Cummings' indictment could have resulted. Additionally, Detective Gilbreath testified that he presented other information to the grand jury which was supported by other sources, including evidence of the fight between Johnson and Cummings' uncle, evidence that Cummings admitted being present but accused another as the shooter, evidence that Cummings had an Uzi shortly before the murder, and the forensic evidence. Because there was sufficient evidence to show probable cause to indict Cummings for the murder, there was no error in failing to dismiss the indictment.
*948 Cummings' second argument, that it was error for the trial court not to excuse the jury foreman for cause, does not demonstrate reversible error. The juror responded to a question at voir dire asking whether the fact that the victim was a child would make a difference in the juror's mind:
PROSPECTIVE JUROR: I have four kids under 13 and I think that would probably weigh in the sentencing ... for me too.
DEFENSE ATTORNEY: Okay. When you say weigh, you mean even if you were told that's something you shouldn't consider, you think it would outweigh
PROSPECTIVE JUROR: It would be in my head.
Cummings challenged the juror for cause, stating:
Your Honor, I believe [the prospective juror in question should be challenged] for cause, and not because he's got to worry about baby-sitting. He said he had four children at home and he thinks it would weigh on his decision, okay, and he couldn't put that out of his head. As the Court is aware, you know, as of now the age of the victim is not an aggravating factor.
The court said: "[W]hat he actually said was he had four children at home and it would be in his mind, but he could put it out of his head. He was very clear about that." The court disallowed the challenge for cause. Because it is clear that the judge incorrectly characterized the juror's response, there is at least a question that the juror might not have possessed the requisite impartial state of mind. See Hill v. State, 477 So.2d 553, 556 (Fla.1985) ("When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause."). However, even if the denial of this challenge for cause was error, it did not constitute reversible error.
In this state we follow "the general rule that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied." Id. In Bryant v. State, 656 So.2d 426 (Fla.1995), the defendant was forced to use one of his peremptories to strike a juror whom he alleged should have been removed for cause. However, the defendant requested and received an additional peremptory which he exercised to strike another juror. Id. at 428. We held that Bryant was not harmed by the court's error in denying his challenge for cause and thus reversal was not required on that basis. Id.
Here, Cummings did not exercise one of his peremptory challenges on the juror in question, and although he did request an additional peremptory which was denied by the court, he identified a different juror as the one for whom he requested the additional peremptory. Cummings sought the additional peremptory to excuse a teacher's assistant. The court asked, "And that was the one that you would ask for an additional challenge for?" After Cummings' attorney answered affirmatively, the request was denied. Cummings has not demonstrated any harm; he did not request an additional peremptory to be used for the juror in question. Therefore, the denial of the cause challenge as to this juror does not constitute reversible error.
We find no merit to Cummings' third argument, that it was error to admit his response to being told there was a child killed in the shooting. The State proffered the testimony of Michael Gardner, who testified that when he told Cummings that a baby had gotten shot during the incident, Cummings responded, "So fuck it." Gardner added that the next day Cummings sought him out and asked him to corroborate a false alibi. Cummings objected that the profane statement was not relevant. The State argued that the response showed consciousness of guilt. The judge overruled the objection, stating:
I'll overrule the objection. I think the portion of the testimony of what I've abbreviated as false exculpatory attempt at false corrupt story is relevant. I think that the portion leading up to that, that is to say the witness believed he knew about *949 what happened and why the false corrupt story was being requested, makes it relevant and I'll overrule the objection and the juries will both get to hear the testimony....
A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. Kearse v. State, 662 So.2d 677, 684 (Fla.1995); Blanco v. State, 452 So.2d 520, 523 (Fla.1984). We do not find that the court abused its discretion in admitting this testimony which was relevant to the issue of consciousness of guilt. The jury could properly have inferred from these comments that Cummings was denying knowledge of the shooting, and, taken together with the testimony that Cummings returned subsequently to ask Gardner to corroborate a false alibi, the jury could have used the inconsistent statement in determining whether Cummings attempted to avoid detection.
Cummings' fourth argumentthat it was error not to allow testimony stating that Cummings was aware Johnson carried a gunis meritless. Cummings argued that the testimony was relevant to show why he armed himself and that it showed that Cummings' actions were more reasonable and less premeditated: "If he was going out to settle the score with someone who he thought was known to be armed, was told was armed, and whether he carried a gun would be very relevant, Judge, and I believe that's what we're arguing." The Judge responded, "If he had the right to be a vigilante, it might be. He did not and I will not allow the proffer." There was no issue of self-defense, so the court did not abuse its discretion by excluding the irrelevant testimony.
Cummings also argues that the trial court erred in denying his motion for judgment of acquittal of first-degree murder because the State failed to prove premeditation. The State indicted and prosecuted Cummings on the theory of first-degree premeditated murder, and the trial judge refused the State's request to instruct the jury on felony murder with burglary as the underlying felony. Thus, the jury clearly convicted Cummings of premeditated murder. We conclude that the evidence was insufficient to support his conviction for premeditated murder.
Premeditation is more than a mere intent to kill; it is a fully formed purpose to kill. Wilson v. State, 493 So.2d 1019 (Fla.1986). Premeditation may be proved by circumstantial evidence. Hoefert v. State, 617 So.2d 1046 (Fla.1993). However, premeditation sought to be proved by circumstantial evidence must be inconsistent with every other reasonable inference. Cochran v. State, 547 So.2d 928 (Fla.1989). If the State's proof fails to exclude a reasonable hypothesis that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained. Coolen v. State, 696 So.2d 738 (Fla.1997).
Measured by these principles, we cannot say that the State was able to exclude every reasonable hypothesis that the homicide occurred other than by premeditated design. While Cummings clearly had a motiveretribution against Johnson because of his prior altercation with Fisherwe cannot say that he intended to kill him. To establish proof of intent, the State argues that the occupants of the Honda mistook Sheldon Lucas, Sr., for Johnson and fired into the carport as Lucas went into the house. However, there is no proof that anyone in the Honda actually saw Sheldon Lucas, Sr., standing in the darkness of the carport. In addition, Lucas testified that he had taken about ten steps through the kitchen and into the living room before he heard any shots fired. Thus, we cannot rule out the possibility that Cummings and his cohorts merely intended to frighten Johnson or to damage his car, which was struck by several of the bullets. We hold that there was insufficient proof of premeditation to convict of first-degree murder.
On the other hand, the proof is clearly sufficient for a conviction of second-degree murder, which is defined as the "unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (1993). The circumstances leading up *950 to this event, as well as Cummings' effort to concoct a false alibi, provide more than enough evidence to convict him as a principal in the crime.
Pursuant to section 924.34, Florida Statutes (1997), we reverse the conviction of first-degree murder and remand the case with instructions to enter a judgment for second-degree murder and sentence Cummings accordingly.[3]
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] By turning right the car would have been directly adjacent to the carport.
[2] Fisher was also convicted of first-degree murder and sentenced to death. His direct appeal was argued in September 1997 and is currently pending before this Court. Fisher v. State, No. 86,665 (Fla. appeal filed Oct. 19, 1995).
[3] Our decision renders moot Cummings' remaining points on appeal.