[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2002
THOMAS K. KAHN
CLERK

----------------------------------------
No. 99-14734
----------------------------------------
D.C. Docket No. 99-08091-CV-WPD


WILLIAM VAN POYCK,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
MICHAEL W. MOORE, Secretary of Florida
Department of Corrections,

Respondents-Appellees.


----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------
(May 9, 2002)


Before EDMONDSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

In 1988, Petitioner William Van Poyck was convicted of murder and sentenced to death by a Florida court.[1] Van Poyck brought this petition for habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254. The district court rejected his petition. These issues were certified for appeal: 1) whether Petitioner received ineffective assistance of counsel during the penalty phase of his trial; 2) whether the trial court erred when it denied Petitioner a continuance between the guilt and penalty phases of his trial; 3) whether Petitioner received ineffective assistance of counsel during appellate proceedings; 4) whether the trial court failed to consider properly all of the mitigating evidence before it; 5) whether Petitioner's sentence is based on an invalid aggravating factor; and 6) whether the state

---

[1] Petitioner's conviction and sentence were affirmed on direct appeal. See Van Poyck v. State, 564 So. 2d 1066 (Fla. 1990), cert. denied, Van Poyck v. Florida, 111 S. Ct. 1339 (1991) (hereinafter "Van Poyck I"). Petitioner sought post-conviction relief in Florida state court, but was unsuccessful. See Van Poyck v. State, 694 So. 2d 686 (Fla. 1997) (rejecting Petitioner's motion, brought under Fla. R. Crim. P. 3.850, to vacate his conviction and sentence), cert. denied, Van Poyck v. Florida, 118 S. Ct. 559 (1997) (hereinafter "Van Poyck II"); Van Poyck v. Singletary, 715 So. 2d 930 (Fla. 1998) (rejecting Petitioner's petition for habeas corpus), cert. denied, 119 S. Ct. 1252 (1999) (hereinafter "Van Poyck III").

withheld exculpatory evidence, in violation of <u>Brady v. Maryland</u>, 83 S. Ct. 1194 (1963).  We affirm the district court's ruling on each of the issues.[2]

BACKGROUND

The facts giving rise to Petitioner's conviction and sentence are discussed in the Florida Supreme Court's opinions dealing with this case.  <u>See</u> <u>Van Poyck I</u>, 564 So. 2d at 1067-68.  We will summarize the facts briefly.  In June 1987, Florida inmate James O'Brien -- a friend of Petitioner -- was scheduled to be transported to a doctor's office by two Florida corrections officers: Steven Turner and Fred Griffis.  When the van in which these three men were traveling reached the doctor's office, Petitioner and an accomplice (Frank Valdes) -- who were both armed -- approached the vehicle.  Petitioner took Officer Turner's gun and forced him under the van.  While he was under the van, Officer Turner saw Officer Griffis get out of the van and saw Valdes force Officer Griffis to the back of the van.  Then, Officer Griffis was shot and killed.

---

[2]We see no merit to Petitioner's argument on issue 4, the failure to consider mitigating evidence, or on issue 6, the withholding of exculpatory evidence.  We therefore affirm the district court on these issues without further discussion.

Petitioner was charged with and tried for first-degree murder.[3]  The prosecution argued two different theories to support the charge: 1) that Petitioner had committed premeditated murder against Officer Griffis and 2) a felony murder theory.  The jury convicted Petitioner of first-degree murder and recommended the imposition of the death penalty.  The trial court accepted the recommendation and sentenced Petitioner to death.  On appeal, the Florida Supreme Court decided that insufficient evidence existed to prove beyond a reasonable doubt that Petitioner was the one who actually killed Officer Griffis (that is, that he was the "triggerman").   And the Florida Supreme Court decided the conviction on the basis of premeditation could not be sustained.  Nevertheless, the court upheld the conviction on the basis of felony murder and the sentence.  See id. at 1069.

---

[3]Florida law provides for a three-part process in capital cases. The first stage is the guilt phase.  If a defendant is convicted of a capital crime, the prosecution and the defendant then present aggravating and mitigating evidence.  After hearing the evidence, the  jury makes a recommendation on whether life imprisonment or execution is the proper punishment.  Although it is entitled to "great weight," the jury's recommendation is not binding upon the trial court.  Instead, the trial court conducts its own sentencing hearing and ultimately decides for itself whether the imposition of the death penalty is appropriate. See Fla. Stat. Ann. § 921.141(1)-(3); Bolender v. Singletary, 16 F.3d 1547, 1556 (11th Cir. 1994).

## STANDARD OF REVIEW

This petition for habeas corpus was filed on 3 February 1999, well after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Therefore, pursuant to 28 U.S.C. § 2254(d), a petition for a writ of habeas corpus can only be issued if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 120 S. Ct. 1495, 1518 (2000), cert. denied, 22 S. Ct. 1367 (2002). Unless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness. The district court's determination of whether this standard has been met is subject to a *de novo* review. See Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir. 2001). A district court's findings of fact are reviewed for clear error. See Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000).

I.      Ineffective Assistance of Counsel at the Penalty Phase

Petitioner argues that his lawyer ("Counsel") provided ineffective assistance during the penalty phase of his trial. He contends that several omissions by Counsel rendered his assistance ineffective: 1) evidence that Petitioner suffered from a mental disorder; 2) evidence of Petitioner's life history; and 3) evidence that Petitioner was not the triggerman.

The standard for reviewing ineffective assistance claims was well-established when the Florida Supreme Court decided Petitioner's ineffectiveness arguments: a petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)[4] (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

---

[4]We realize that -- in the context of a habeas review of a state court's decision -- only Supreme Court precedent can clearly establish the law. We cite Eleventh Circuit case law to demonstrate some applications of the relevant Supreme Court precedent that we believe are among the reasonable applications.

For assessing a lawyer's performance, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000) (en banc) <u>cert.</u> <u>denied</u>, 121 S. Ct. 1217 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 1314 (internal marks omitted). This presumption of correctness applies when a petitioner is challenging his lawyer's act in not presenting certain mitigating evidence. <u>See</u> <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1557 (11th Cir. 1994) ("A lawyer's election not to present mitigating evidence is a tactical choice accorded a strong presumption of correctness which is *virtually unchallengeable."*) (emphasis added) (internal marks omitted). Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>See</u> <u>Strickland</u>, 104 S. Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. <u>See</u> <u>Chandler</u>, 218 F.3d at 1315. Because the standard is objective, Petitioner's argument that his counsel would have done more investigation if the trial court had granted a continuance

7

between the guilt and penalty phases of the trial[5] and that his counsel, during a post-conviction evidentiary hearing, claimed to have been "caught with his pants down" in preparing for the penalty phase is not determinative. See id. at 1313 (stating that "lawyers, in every case, could have done something more"); Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999) (stating that lawyer's "admissions of deficient performance" were not persuasive).

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S. Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

A.    Mental Health History

Petitioner argues that Counsel was deficient for failing to introduce evidence that Petitioner suffered from various disorders. Petitioner specifically claims that

---

[5]This denial of a continuation does, however, raise other issues and will be discussed in Part II below.

he suffers from "a serious thought disorder," and argues that the jury should have heard evidence of "multiple diagnoses of paranoid schizophrenia, [a] lengthy history of treatment with antipsychotic medications, the two admissions to the Florida State Hospital, and . . . attempts at self harm." (Petition for Habeas Corpus at 24.) In addition, he claims to suffer from "a personality disorder with immature and dependent features." (Id.)

Petitioner cannot prevail on these claims. The Florida Supreme Court determined that Counsel "had clear tactical reasons" for not presenting mental health evidence. See Van Poyck II, 694 So.2d at 692. That determination and the conclusion that Counsel's performance therefore was not deficient are not unreasonable.

During a post-conviction evidentiary hearing, Counsel identified a number of reasons for not arguing Petitioner's mental health as a mitigating factor. First, Petitioner had spent most of his adult life in prison; and most evidence of Petitioner's mental health would have been based upon prison records. Counsel concluded that the use of such records would have opened the door to a considerable amount of damaging evidence: many disciplinary reports, weapons offenses, and escape attempts. Second, in discussions between Petitioner and

9

Counsel before trial, Petitioner claimed to have faked many of the episodes that led to his being sent to the Florida mental hospital.

These considerations give strong support to Counsel's decision not to present mental health evidence. First, a lawyer need not embrace his client's fraud. See, e.g., Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997) (lawyer has "ethical duty not to present a defense based upon what he personally knew to be a lie"). And, the harm from the jury learning of these other factors could have outweighed the benefits of the evidence Petitioner now says should have been presented. A reasonable tactic, such as the one followed by Counsel, cannot form the basis for an ineffective assistance claim.

B.    Life History

Petitioner also claims that Counsel's failure to present evidence of Petitioner's life history deprived him of the effective assistance of counsel. He specifically points to evidence of a difficult childhood, abuse at the hands of caretakers, and abuse suffered in juvenile prison. Petitioner identifies several additional witnesses who he says could have testified to the early death of Petitioner's mother, the emotional withdrawal of his father, physical abuse at the

10

hands of a housekeeper, the fact that the Van Poyck children were looked after for a time by a mentally unstable aunt (Aunt Phyllis), and further abuse at the hands of Petitioner's stepmother (the father's second wife). Petitioner points to evidence of conditions Petitioner suffered at the Florida School for Boys at Okeechobee, where he was allegedly beaten and witnessed sexual abuse of other children.

In resolving this issue, the Florida Supreme Court concluded that "[e]vidence of [Petitioner's] life history was adequately presented by [Counsel]." Van Poyck II, 694 So. 2d at 692. We accept that conclusion and the findings that support it; they are reasonable.

During the post-conviction evidentiary hearing, Counsel testified that he and Petitioner had discussed the penalty phase and the presentation of mitigating evidence "constantly." At the penalty phase hearing itself, Counsel called five witnesses. These witnesses testified to much of what Petitioner now claims Counsel failed to show the jury.

At trial, Jeff Van Poyck, Petitioner's brother, testified to their mother's early death, abuse from the housekeeper, and the strict discipline imposed by their stepmother. He also testified about how he had involved Petitioner in crime and in alcohol use at an early age. Petitioner's stepmother testified to the mental instability of Aunt Phyllis and to the negative influence Jeff had over Petitioner.

11

Another aunt also testified to the mental instability of Aunt Phyllis. Finally, Counsel called a nurse who had met Petitioner while he was in prison. She testified that Van Poyck was a caring and friendly person and that he had expressed remorse over the death of Officer Griffis. Petitioner also testified on his own behalf. He testified to his close relationship with O'Brien, his educational pursuits in prison, and his regret of the death of Officer Griffis.

The presentation of life-history evidence at the trial satisfied the performance element of the <u>Strickland</u> test. That additional evidence might exist does not establish defective performance. It is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented. See <u>Waters</u>, 46 F.3d at 1518.[6]

Moreover, the omission at trial of the specific evidence that Petitioner says should have been introduced was not so unreasonable as to give rise to a valid ineffective-assistance claim. The only non-cumulative, mitigating life history

[6]We note what is well-established in this circuit because, if this circuit's law has developed in a certain way, we are hard-pressed to say that that development was unreasonable.

evidence[7] Petitioner identifies is abuse from his stepmother and abuse suffered in juvenile prison. The failure to present this evidence was not, however, ineffective assistance.

First, the additional evidence was not so powerful that every objectively reasonable lawyer who had the evidence would have used it. And, even if the evidence was that powerful, the evidence was not known to Counsel at the time of the penalty phase; and the failure to know of it was not the result of a constitutionally deficient investigation. Counsel and Petitioner talked "constantly" about potential mitigating evidence. During these conversations, the question of abuse was discussed "on a number of occasions," according to Counsel's post-conviction testimony. Petitioner stated that he did not think he had been abused as a child. Furthermore, Petitioner specifically denied that he was ever raped in prison and told Counsel that he generally got along fine in prison. Although Petitioner's experiences in the juvenile prison were never explicitly discussed, at

---

[7]As noted above, much of the additional evidence Petitioner says should have been presented was presented. See Van Poyck II, 694 So. 2d at 692 ("[T]he jury was actually aware of most aspects of Van Poyck's life that he now argues should have been presented."). A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative. See Glock v. Moore, 195 F.3d 625, 636 (11th Cir. 1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice), cert. denied, 121 S. Ct. 213 (2000).

13

no time during the many conversations Petitioner and Counsel had about potential mitigating factors did Petitioner suggest abuse in juvenile prison.

Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate. In Strickland, the Supreme Court wrote "[c]ounsel's actions are usually based, *quite properly*, on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 104 S. Ct. at 2066 (emphasis added). When a petitioner (or family members petitioner directs his lawyer to talk to) do not mention a history of physical abuse, a lawyer is not ineffective for failing to discover or to offer evidence of abuse as mitigation. See Williams v. Head, 185 F.3d 1223, 1237 (11th Cir. 1999) ("An attorney does not render ineffective assistance by failing to discover and develop evidence of childhood abuse that his client does not mention to him."), cert. denied, 120 S. Ct. 2696 (2000). Therefore, the Florida Supreme Court's rejection of this claim was not unreasonable.

C.   Triggerman Evidence

Petitioner argues that Counsel's performance was constitutionally defective because he failed to present evidence that Petitioner was not the triggerman. He

identifies two such pieces of evidence: that Valdes had blood on his clothes matching Officer Griffis's blood type, but that Petitioner did not; and that the murder weapon had been purchased by Valdes's girlfriend and that Valdes had been in possession of the gun when he and Petitioner left to commit the crime.

The Florida Supreme Court in its opinions has not discussed this particular ineffectiveness claim. The lack of words in the Florida Supreme Court opinions, however, does not lessen the deference that is to be given the Florida Supreme Court's rejection of Petitioner's contention: we still can only grant relief if the Florida Supreme Court's rejection of the claim was directly contrary to, or was an unreasonable application of, clearly established federal law. See Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1253-56 (11th Cir. 2002). We conclude that the Florida Supreme Court's decision on the issue was not unreasonable.

We -- in this instance -- do not discuss the performance element of ineffective assistance of counsel because we conclude that the Florida Supreme Court could have reasonably concluded that no prejudice had been shown. A review of the penalty phase transcripts convinces us that Petitioner cannot establish that he was prejudiced by Counsel's failure to introduce this evidence. During the penalty phase, the witnesses called by the prosecutor only testified about Van

Poyck's past crimes and about the fact that he was on parole when the instant offense was committed. The prosecutor did not present additional evidence suggesting that Petitioner was the triggerman.

Even more telling is the prosecutor's closing argument. Petitioner's being the triggerman played only a very minor role in the prosecutor's argument. As aggravating factors, the prosecutor advanced these things: 1) that Petitioner was on parole when the crime was committed; 2) that the crime was committed for the purposes of effectuating an escape from prison; 3) that Petitioner knowingly created a great risk of death to many persons; and 4) that Petitioner had previously been convicted of a violent felony. The establishment of these elements did not require arguing that Petitioner was the triggerman. The prosecutor never argued that it had been established beyond a reasonable doubt that Petitioner was the triggerman.

The only time the prosecutor did argue that the evidence tended to show that Petitioner was the triggerman was in rebutting Petitioner's argument that he was only an accomplice and played only a minor role in the crime.[8] Even in rebutting that argument, however, the prosecutor relied heavily on the idea that, "[r]egardless

_____

[8]Florida law provides that a mitigating circumstance exists where "[t]he defendant was an accomplice in the capital felony committed by another person and his or her participation was relatively minor." Fla. Stat. Ann. § 921.141(6)(d).

16

of who the triggerman is," death would still be appropriate. Rather than focusing the jury on who the triggerman was, the prosecutor stressed that Petitioner could not be considered a minor participant because he had been the one to come up with the idea of breaking O'Brien out of custody and had planned the crime. While the prosecutor did, on a few occasions in his closing argument, say that evidence in the case suggested that Petitioner was the triggerman, the main argument made by the prosecutor was that the death penalty -- because of the four aggravating factors and because Petitioner was not a minor participant in the underlying violent felony -- was an appropriate sentence for Petitioner, regardless of who actually shot Officer Griffis.

Especially because the prosecutor's main argument was that the death penalty was appropriate regardless of who the triggerman was, we see no reasonable probability that, if Counsel had presented the additional evidence that Petitioner was not the triggerman, the outcome of the sentencing phase would have been different. The Florida Supreme Court could reasonably conclude that no prejudice existed. The Florida Supreme Court did reasonably conclude that the triggerman-evidence claim entitled Petitioner to no relief.

II.     Denial of Continuance

Second, Petitioner argues that the trial court deprived him Due Process and his right to counsel and a particularized death sentence when the court failed to provide a continuance between the guilt and penalty phases of his trial.  Petitioner claims that Counsel had relied upon the trial court's earlier promises to grant such a continuance and that Counsel had planned to conduct more extensive penalty phase investigations during the promised continuance.  This claim is another one that is denied without discussion in the Florida Supreme Court's opinions.  Giving the Florida Supreme Court's decision on this issue the proper deference, we conclude that the rejection of this claim was not unreasonable.

The decision of whether to grant a continuance is reserved to the sound discretion of the trial court.  See United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000); Gorby v. State, 630 So. 2d 544, 546 (Fla. 1993).  Furthermore, to establish that a denial of a continuance was reversible error, a defendant must show that the denial caused "specific substantial prejudice."  United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995); see also Fennie v. State, 648 So.2d 95, 97-98 (Fla. 1994).

We agree with the district court that the Florida Supreme Court was not unreasonable in rejecting this claim, because the Florida Supreme Court could conclude that the trial court did not abuse its discretion in denying the motion for a continuance. This case is not one in which the trial court had been promising a continuance all along, only to pull the rug out from under Petitioner at the last minute. Nor is it a case in which a defendant has been brought to trial shortly after being charged and defendant has simply lacked sufficient time to prepare a defense. The only indication that the trial court ever promised a lengthy (1-3 week) continuance comes from the testimony of Petitioner's trial lawyers. This supposed promise, however, was made off the record. Furthermore, the promise stands in contrast to the record statements made by the trial court throughout the proceedings.

The district court in this case found that "[d]efense counsel were aware during the guilt phase that the penalty phase would commence virtually immediately after the guilt phase." (District Court Order at 21). Counsels' acts suggest that they knew the penalty phase would begin shortly after the guilt phase. The district court found many indications from the trial court to the Petitioner that only a short time between the guilt and penalty phase would be given. Moreover, at the end of the guilt phase, it was Counsel who insisted that the jury be

19

"sequestered tonight in the event they have to come back tomorrow." The

sequestration was made on the assumption that the jury would return the next day

for sentencing, and Counsel made no indication that he objected to beginning the

penalty phase the next day. The district court's finding that Petitioner's lawyers

understood that little time would be given between the guilt and penalty phases

was not clearly erroneous.[9] Given those facts, the Florida Supreme Court could

have reasonably concluded that the trial court did not abuse its discretion in

denying the continuance. Therefore, the Florida Supreme Court's rejection of the

claim based on the denial of a continuance was reasonable.


III.   Ineffective Assistance on Direct Appeal


Petitioner further argues that he received ineffective assistance of counsel

because his lawyer on direct appeal ("appellate counsel") failed to present properly

a state law claim based on peremptory challenges to jurors. Under Florida law,

---

[9]In this case, we need not address the proper deference to give the implicit or unexpressed factual determinations made by the state court when it summarily denied this claim. Here, the state embraces the findings of the district court, so we will not decide whether federal courts are required to presume that the state courts, in rejecting Petitioner's claim, resolved all factual questions in the government's favor.

"the general rule [is] that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied." Cummings v. State, 715 So. 2d 944, 948 (Fla. 1998).[10]

In this case, Petitioner identifies seven jurors who he says should have been dismissed for cause, but on whom he was forced to use peremptory challenges. To make out a claim like this one, a defendant, however, must also identify at least one juror who he wanted to challenge, but who he was forced to accept on the jury because he had run out of peremptory challenges. The alleged lawyer error here is that appellate counsel named the wrong two jurors. While appellate counsel should have named jurors Moody and Bradford (who did, in fact, sit on the jury), he instead named jurors Bruschi and Abefarmis. Bruschi and Abefarmis had, however, been dismissed for other reasons. Therefore, the Florida Supreme Court

---

[10]We recognize that federal law does not require reversal where a defendant is forced to use a peremptory challenge on a juror who should have been dismissed for cause. See Ross v. Oklahoma, 108 S. Ct. 2273, 2278 (1988). Petitioner, however, is not claiming a direct violation of federal law with respect to jury composition. Instead, Petitioner is raising an ineffective assistance claim and arguing that he was prejudiced by his appellate lawyer's failure to assert properly a valid state-law claim.

21

ruled that petitioner's challenge to jury composition was "moot." Van Poyck I, 564 So. 2d at 1070.

In denying Petitioner's state habeas corpus petition, the Florida Supreme Court rejected Petitioner's argument that appellate counsel was ineffective in presenting the jury-composition claim. In rejecting the ineffective-assistance-of-appellate-counsel claim, the Florida Supreme Court determined that Petitioner failed to establish the necessary prejudice: after reviewing the voir dire, the Florida Supreme Court wrote that "each of the seven persons repeatedly and unequivocally stated that he or she could render a verdict based solely on the evidence and the instructions given by the trial judge. We find nothing in this record that mandates that any of these venirepersons should have been excused for cause." Van Poyck III, 715 So. 2d at 932-34.[11] We accept that conclusion; Petitioner has not met his heavy burden of showing that it is unreasonable, either in fact or in law.[12]

_____

[11]Although the Florida Supreme Court did not explicitly address the venire of Bradford and Moody, the district court did. The district court wrote that "both Moody and Bradford were appropriately on the jury." (District Court Order at 16.) For the reasons discussed below with respect to the other challenged jurors, we agree with that ruling.

[12]Petitioner argues that the Florida Supreme Court's statement on direct appeal that jurors Bruschi and Abefarmis should have been dismissed for cause required that court to hold, in the state habeas proceedings, that the jurors who are relevant to the claim should also have been dismissed for cause. This argument is without merit. The Florida Supreme Court's statement that jurors Bruschi and

22

In Morgan v. Illinois, 112 S. Ct. 2222 (1992), the Supreme Court wrote that a trial court must exclude "those biased persons on the venire who as jurors would unwaveringly impose death after a finding of guilt." Id. at 2232. And, a trial court has a duty to question (or allow questioning of) prospective jurors to ensure that a person who would automatically vote for the death penalty is disqualified. See id. at 2230-31.

Critical to the resolution of this claim is the Morgan court's discussion of the kinds of questions that a defendant must be allowed to ask to allow the defendant to illustrate for the court which jurors were inalterably in favor of the death penalty. The extent of the Morgan court's holding on this issue is only that generalized "can you be fair?" and "can you follow the law?" questions are insufficient. See id. at 2233-34. The jurors in Morgan were never specifically asked whether they understood that "being fair" and "following the law" might mean returning a life verdict.

Abefarmis should have been dismissed for cause is only dicta, unnecessary to the decision. The Florida Supreme Court stated that the claim was "moot" because Bruschi and Abefarmis had been dismissed for other reasons. See Van Poyck I, 564 So. 2d at 1070. The "law of the case" doctrine does not apply to dicta. See Myers v. Atlantic Coast Line R.R. Co., 112 So. 2d 263, 267 n.6 (Fla. 1959); see also Golden v. State, 528 So. 2d 50, 51 (Fla. Ct. App. 1988) ("The doctrine of the law of the case applies only to issues actually or impliedly presented *and decided* on appeal, and not to mere dicta.") (emphasis added).

This case presents different facts. It is true that many of the challenged jurors expressed strong support for the death penalty; and some even initially suggested that, for certain crimes, they thought they would always return a death recommendation. Each juror, however, upon being instructed by the trial court on the law of Florida, not only said that he or she could be fair and follow the law, but also stated that he or she could return a life imprisonment recommendation if the facts and the law warranted it. In addition, each juror indicated, in response to questioning by the prosecution, that it would not be fair to defendants if juries returned a death recommendation in every case. We are aware of no Supreme Court case, and Petitioner has cited none, that has held that such a fact pattern requires reversal. And, we do not consider the Florida Supreme Court's conclusion to have been an unreasonable application of Morgan or any other Supreme Court case decided before the Florida Supreme Court's decision.

IV.    Consideration of Invalid Aggravating Factor

Petitioner also claims that the trial court committed error by considering, and allowing the jury to consider, that he was the triggerman. Error does exist where the sentencer relies upon an invalid factor. See Mills v. Maryland, 108 S. Ct. 1860,

24

1866 (1988). In this case, Petitioner argues that his being the triggerman was an invalid consideration because it is not supported by the evidence. In making this argument, Petitioner relies upon the Florida Supreme Court's ruling on his direct appeal, where the court ruled that insufficient evidence existed to prove that Van Poyck was the triggerman. See Van Poyck I, 564 So. 2d at 1069.

As the Florida Supreme Court noted, however, another basis for the imposition of the death penalty existed: felony murder. The felony murder argument was supported by the evidence and is a sufficient basis for imposing the death penalty. See id. at 1070-71. The Florida Supreme Court's ruling sustaining the imposition of the death penalty was not unreasonable.

Where, as here, a jury is presented with two theories of the case, one supported by the evidence and the other not, we should presume that the jury relied on the supported theory. See Sochor v. Florida, 112 S. Ct. 2114, 2122 (1992). We have no good reason to think that the jury relied on something more than the factually supported theory of felony murder. Petitioner points to the jury's verdict form from the *guilt* phase of the trial, which indicates that at least one -- but not all -- of the jurors would have convicted Petitioner on the basis of premeditated murder. The question, however, is what the jury considered at the penalty phase of the trial.

25

In deciding this question, it seems useful to look at the closing arguments made during the penalty phase. As discussed above, whether Petitioner was actually the triggerman was of only minimal importance during the prosecutor's closing. Never did the prosecutor argue triggerman status as an aggravating factor that would justify the death penalty. And, in rebutting Petitioner's argument that Petitioner's minor role in the crime should be considered a mitigating factor, the prosecutor focused chiefly on Petitioner's role in orchestrating and planning the crime, not on whether Petitioner was the triggerman. The prosecutor's expressed argument was that Petitioner deserved death whether or not Petitioner was the triggerman.

Petitioner also argues that the trial court improperly relied upon his being the triggerman. Again, the Florida Supreme Court's rejection of these claims was not unreasonable.

The sole indicator that the trial court considered Petitioner to be the triggerman is a passage in the order imposing the death penalty, in which the trial court stated "the State clearly presented competent and substantial evidence as to the crime of first degree felony murder and/or first degree pre-meditated murder and in reality presented competent evidence that [Petitioner] may have in fact been the individual who pulled the trigger and shot Fred Griffis." The trial court never

stated that it found Petitioner, in fact, to have been the triggerman or that the court considered Petitioner's triggerman status to be an aggravating factor justifying the death penalty. The only aggravating factors the trial court found to exist were the four argued by the prosecutor in his closing, and none of those factors is based upon triggerman status.

In arguing that the trial court's alleged error requires reversal of the death penalty, Petitioner relies heavily on our decision in Delap v. Dugger, 890 F.2d 285 (11th Cir. 1989). In Delap, the trial court at defendant's first trial had rendered a judgment of acquittal on a charge of felony murder. Then at the sentencing phase of the defendant's retrial (at which he had been convicted of premeditated murder), the court had imposed a death sentence. The trial court explicitly relied on the specific statutory factor that the murder occurred during the commission of a felony. See Delap, 890 F.2d at 307. The elements and burden of proof for felony murder as a basis for conviction and for "murder in the course of a felony" as an aggravating factor were almost identical. We declared that the imposition of the death penalty on such a basis violated the double jeopardy clause. See id. at 317-19.

Here, the facts are significantly different.[13]  The prosecutor did not argue triggerman status as an aggravating factor.  And in listing the aggravating factors it had determined to be present, the trial court only listed the four factors argued by the prosecutor; triggerman status was not mentioned as an aggravating factor.  That the trial court concluded that the prosecution had "presented competent evidence that [Petitioner] may have in fact been the individual who pulled the trigger and shot Fred Griffis" does not mean that the trial court had found, beyond a reasonable doubt, that Petitioner was the triggerman.  And, it certainly does not mean that the trial court relied upon Petitioner's role as triggerman as some kind of aggravating factor.  As such, the rule of Delap has not been violated, and Petitioner has made no showing that the Florida Supreme Court's rejection of his claim was unreasonable. Petitioner's petition for a writ of habeas corpus on this ground must therefore be denied.

---

[13]We again stress that, even if the underlying facts of Delap were identical to the underlying facts of this case, Petitioner would still not necessarily prevail. Petitioner's burden is to show that the Florida Supreme Court's opinion was an unreasonable application of federal law according to the United States Supreme Court.  Reasonable judges can disagree on the proper interpretation of the United States Supreme Court's precedents; a state court ruling that is contrary to Eleventh Circuit law might still be a reasonable application of Supreme Court precedent.

Based upon the above considerations, we conclude that the district court's denial of a writ of habeas corpus was proper. The judgment of the district court is affirmed.

AFFIRMED.