826 So.2d 1064 (2002)
STATE of Florida, Petitioner,
v.
Nathaniel GATES, Respondent.
No. 2D02-1189.
District Court of Appeal of Florida, Second District.
September 27, 2002.
*1065 Mark A. Ober, State Attorney, and Scott Harmon, Assistant State Attorney, Tampa; and Robert A. Butterworth, Attorney General, Tallahassee, and Katherine V. Blanco, Assistant Attorney General, Tampa, for Petitioner.
Julianne M. Holt, Public Defender, and Samantha Ward, Assistant Public Defender, Tampa, for Respondent.
PARKER, Judge.
In this petition for writ of certiorari, the State challenges the trial court's pretrial order granting Nathaniel Gates's motion to forbid the State from proceeding on a theory of prosecution inconsistent with that presented during the trial of Gates's codefendant Joshua Bailey. We grant the petition in part and deny it in part.
Gates and Bailey were both charged with first-degree murder for the death of Donald Frier. The police investigation established that Gates and Bailey had a dispute with Frier while at a convenience store. Gates and Bailey left the store and waited for Frier along a path that Frier routinely traveled to go home. When Frier came down the path, Gates and Bailey jumped on him and began beating him, ultimately breaking his jaw and rendering him unconscious. Gates and Bailey then dragged Frier to a small pond, where one or both of them held Frier's head under water until he drowned. Gates and Bailey then took Frier's bicycle to a remote location and burned it. The medical examiner testified that Frier died from the drowning, not from the injuries he sustained in the beating.
In statements made to the police, Gates and Bailey each said that the other had been the one to hold Frier's head under water. However, in statements made to friends, Bailey bragged that he had held Frier's head under water until Bailey "stopped hearing gurgling noises." Similarly, Gates told a fellow inmate, Sandy Brackett, that he had been the one to hold Frier's head under the water until he drowned. Thus, when speaking with the police, Gates and Bailey each blamed the other for holding Frier's head under water. However, each took credit for killing Frier when speaking with friends and fellow inmates.
The trial court severed Gates's and Bailey's cases for trial, and Bailey was tried first. In a pretrial ruling in Bailey's case, the trial court excluded Sandy Brackett's testimony concerning Gates's confession, finding that the testimony was inadmissible hearsay and that the context in which the confession was made rendered it unreliable. At Bailey's trial, the jury heard testimony from Bailey's friends that Bailey had bragged about beating Frier and holding his head under water until he drowned. The jury also heard testimony from Bailey that Gates was the one who held Frier's head under water. In closing arguments, while the State briefly argued that Bailey could be convicted as a principal regardless of who held Frier's head under water, the State discounted the principal theory, stating:
To be a principal the defendant does not have to be present when the crime is committed or attempted. He doesn't even have to be present when Mr. Frier *1066 is being drowned for him to be a principal, but I've proven to you that not only was he present here he actually drowned Donald Frier.
The State later continued in this vein, asserting, "I submit to you ... not only was he [Bailey] present[,] he committed the act.... Joshua Bailey definitely by the evidence in this case which has been proven beyond any doubt held Donald Frier's head under water." The jury subsequently convicted Bailey of first-degree murder.
Several months later in a pretrial ruling before Gates's trial, the trial court ruled that Sandy Brackett's testimony was admissible in Gates's trial under the hearsay exception for statements against interest. See § 90.804(2)(c), Fla. Stat. (1999). At Gates's trial, the State asserted in its opening statement that it would prove that "this man [Gates] went into the water and held Donnie Frier's head under the water to make sure he was dead, to make sure he died." The jury heard testimony from Sandy Brackett that Gates had bragged that he had held Frier's head under water. However, the jury also heard Gates's testimony, in which he denied holding Frier's head under water. In closing arguments, the State argued that Sandy Brackett's testimony was the more credible evidence and that the evidence established that Gates had killed Frier by throwing him in the lake and holding him under water until he drowned. The jury convicted Gates of second-degree murder.
Gates appealed his conviction on the ground that the trial court should have recused itself after making various derogatory comments to defense counsel during trial within the jury's hearing. This court reversed Gates's conviction on this basis and remanded for a new trial before a different judge. Gates v. State, 784 So.2d 1235 (Fla. 2d DCA 2001).
In preparation for Gates's retrial on remand, Gates filed a motion arguing that the State's intended theory of guilt violated Gates's due process rights. Gates asked the trial court to exclude Sandy Brackett's testimony because it had been excluded at Bailey's trial as unreliable. Gates also asked the trial court to forbid the State from arguing a theory of guilt at Gates's retrial inconsistent with the theory it had argued at Bailey's trial. Gates contended that because the State had successfully argued at Bailey's trial that Bailey had been the one to drown Frier, the State should not be allowed to argue at Gates's trial that Gates drowned Frier. In essence, Gates sought to limit the State to arguing that, at most, Gates was guilty only as a principal. Following a hearing, the trial court granted this motion. The State then filed a petition for writ of certiorari in this court, seeking review of the trial court's order.
As an initial matter, the State's petition for writ of certiorari is the proper vehicle through which to have this order reviewed. State v. Pettis, 520 So.2d 250, 253 (Fla.1988) (holding that if a nonfinal order does not involve one of the subjects enumerated in Florida Rule of Appellate Procedure 9.140(c)(1), review via a petition for writ of certiorari is appropriate because the State would not otherwise have any avenue to correct the error). In order for the writ to issue, the State must prove that the trial court's ruling violated a clearly established legal principle which would result in material injustice. State v. Cohens, 701 So.2d 362, 363 (Fla. 2d DCA 1997); State v. Dennis, 696 So.2d 848 (Fla. 2d DCA 1997).
Applying that standard to the trial court's order, we hold that, to the extent the order forbids the State from introducing admissible evidence against Gates, the order violates a clearly established legal principle. The crux of Gates's evidentiary argument is that because the testimony of *1067 Sandy Brackett was excluded from Bailey's trial as being unreliable, the State should not be allowed to admit this "unreliable" evidence against him in his trial. However, at neither the hearing on the motion in the trial court nor in his brief to this court has Gates explained how allowing the State to introduce unquestionably admissible evidence against him violates his due process rights.
Brackett's testimony consisted essentially of Gates's jailhouse confession to holding Frier's head under water. However, Gates's confession to Brackett also included numerous statements that implicated Bailey in both the battery and the murder. At Bailey's trial, this testimony was properly excluded based on confrontation clause concerns. See Lilly v. Virginia, 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (holding that a codefendant's confessions, particularly those that spread blame among all codefendants, are presumptively unreliable and therefore unlikely to be admissible in another codefendant's trial); Brooks v. State, 787 So.2d 765, 776-77 (Fla.2001) (discussing and adopting Lilly's analysis under Florida law). No such confrontation clause concerns exist in admitting Brackett's testimony against Gates at his trial. The fact that evidence excluded at Bailey's trial under the confrontation clause is admissible against Gates under Florida's evidence code does not violate Gates's due process rights. Therefore, to the extent that the trial court's order excludes Brackett's testimony from Gates's trial, it constitutes a violation of a clearly established legal principle. Accordingly, we grant the petition and quash the trial court's order to the extent that it excludes admissible evidence against Gates.
However, the State has not established that the trial court's order violated a clearly established legal principle to the extent that it prohibits the State from arguing a theory of guilt in Gates's trial that is inconsistent with that argued at Bailey's trial. The State has not cited, and we have been unable to find, any published case holding that the State may present two directly conflicting theories of prosecution in separate trials of codefendants that arise out of the same crime.
The State points to Parker v. State, 542 So.2d 356 (Fla.1989), in support of the proposition that it can present conflicting theories of prosecution in separate trials. However, the Parker case simply held that the State did not have a duty to tell the jury that it was taking an inconsistent position. Moreover, a review of Parker's codefendant's case, Bush v. Singletary, 988 F.2d 1082 (11th Cir.1993), shows that the State did not actually take inconsistent positions at the trials of the two codefendants. Rather, at Parker's trial, the State argued that Parker was the triggerman. At Bush's trial, while the State made one isolated comment that suggested that Bush might have been the triggerman, the State primarily argued that it "did not have to prove that Bush touched or stabbed the victim to sustain a first degree murder conviction." Id. at 1088. Thus, it is clear from reading both cases that the State's arguments were not actually inconsistent.
The State also points to Jennings v. State, 718 So.2d 144 (Fla.1998), in support of its argument. However, in that case, the Florida Supreme Court found that the State's theories against each defendant were not inconsistent.
Contrary to Jennings' argument, the fact that the State argued in Graves' trial that Graves was the "leader" in the robbery is not necessarily inconsistent with the argument (and the trial court's finding) that Jennings was the actual murderer. As further found by the trial court below:

*1068 The prosecution took the same position in both trialsthat this defendant wielded the knife and actually killed the three victims while Graves remained outside the freezer door with the pellet pistol which closely resembled a Colt .45 semi-automatic pistol assisting in the confinement of the victims to the freezer.... The evidence is consistent with the position taken by the state.
Id. at 154. Therefore, the Jennings case does not stand for the proposition that the State may make inconsistent arguments against codefendants.
The State also relies on Nichols v. Scott, 69 F.3d 1255 (5th Cir.1995). In that case, Nichols and his codefendant, Williams, were both indicted for capital murder. The evidence showed that both of them entered a convenience store to rob it, both fired shots at the clerk, and one of those shots hit the clerk, killing him. Id. at 1260. While the State accurately quotes from that case that what the prosecution argued in one case had nothing to do with the subsequent case, that quote does not fully reflect the facts of the case. Williams pleaded guilty to the charge of capital murder, and the State proffered Williams' testimony in support of its factual basis for the plea. Id. at 1260 n. 2. The prosecution also stated as part of its factual basis that Williams could have fired the fatal shot, but that he was guilty of the murder in any event under the Texas law of parties, which is similar to Florida's law of principals. Therefore, while the prosecutor made an isolated statement that Williams might have been the shooter and relied on Williams' testimony to provide a factual basis for the guilty plea, the prosecutor never actually argued any theory of guilt against Williams to any jury.
Nichols, however, pleaded not guilty and was subsequently tried before a jury. Id. at 1261. At that trial, Nichols offered Williams' testimony that Williams had fired the fatal shot. Id. The State argued to the jury that Williams' testimony was not worthy of belief. Id. at 1261-62. However, "the main thrust of the state's argument was that regardless of who fired the fatal shot, and regardless of whether Williams' testimony was credited, Nichols was guilty under the law of parties." Id. at 1262. Therefore, the Nichols case does not support the State's position here.
Finally, as supplemental authority, the State cited Van Poyck v. Florida Department of Corrections, 290 F.3d 1318 (11th Cir.2002). In that case, however, the court again found that the arguments against the two codefendants were not inconsistent.
The prosecutor never argued that it had been established beyond a reasonable doubt that [Van Poyck] was the triggerman.
The only time the prosecutor did argue that the evidence tended to show that [Van Poyck] was the triggerman was in rebutting [Van Poyck's] argument that he was only an accomplice and played only a minor role in the crime.... [T]he prosecutor relied heavily on the idea that, "[r]egardless of who the triggerman is," death would still be appropriate.
Id. at 1326. Therefore, as in the other cases, the court found no inconsistency in the prosecutor's arguments against two codefendants. In the absence of any case allowing the State to proceed on diametrically opposed theories of guilt against codefendants, this court cannot hold that the trial court violated a clearly established principle of law in granting Gates's motion and in refusing to allow the State to present a theory of guilt at Gates's trial inconsistent with the theory it presented at Bailey's trial.
*1069 An improper argument by a prosecutor can make a trial so fundamentally unfair as to deny a defendant due process. Donnelly v. DeChristoforo, 416 U.S. 637, 646-47, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); Bush, 988 F.2d at 1088. In this case, the State's attempt to argue inconsistent theories of guilt against two codefendants to the same crime is fundamentally unfair. Thus, at Gates's trial, the State may not dismiss the principal theory and argue that Gates is solely responsible for Frier's death. The State may, however, argue that Gates and Bailey worked together and, regardless of who held Frier's head under water, both are equally responsible for his death. Thus, to the extent that the trial court's order prevents the State from arguing inconsistent theories of guilt, the order does not violate a clearly established principle of law, and the State's petition is denied.
The petition for writ of certiorari is granted in part and denied in part.
FULMER and WHATLEY, JJ., Concur.