564 So.2d 1066 (1990)
William VAN POYCK, Appellant,
v.
STATE of Florida, Appellee.
No. 73,662.
Supreme Court of Florida.
July 5, 1990.
Rehearing Denied September 4, 1990.
*1067 William Lasley and Peter Grable of William Lasley Law Offices, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Alfonso M. Saldana and Don M. Rogers, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
William Van Poyck appeals his convictions for first-degree murder, attempted first-degree murder, aiding in an attempted escape, aggravated assault, and six counts of attempted manslaughter and his sentence of death imposed for the first-degree murder conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Van Poyck's convictions and sentences.
The record establishes that on June 24, 1987, corrections officers Steven Turner and Fred Griffis transported James O'Brien, a state prison inmate, in a van from Glades Correctional Institute to a dermatologist's office for an examination. Griffis, who was not armed, drove the van while Turner watched O'Brien, who was secured in a caged area behind Griffis. After Griffis pulled the van into an alley behind the doctor's office, Turner looked down for his paperwork. Upon looking up, he saw a person, whom he later identified as Van Poyck, aiming a pistol at his head. Van Poyck ordered Turner to exit the van. At the same time, Frank Valdez, an accomplice of Van Poyck's, went to the driver's side of the van. Turner testified that Van Poyck took his gun, ordered him to get under the van, and kicked him while he was attempting to comply with Van Poyck's order. He testified that, while under the van, he saw Griffis exit the van; he noticed another person forcing Griffis to the back of the van; and, while noticing two sets of feet in close proximity to the rear of the van, he heard a series of shots and saw Griffis fall to the ground. Turner further stated that Van Poyck had stopped kicking him when the gunfire started, but noted that he did not know where Van Poyck was at the time of the shooting. Griffis was shot three times, once in the head and twice in the chest. Expert testimony indicated that the shot to the head was fired with the barrel of the gun placed against Griffis' head and that each of the wounds would have been fatal. It was also determined that the murder weapon was a Hungarian Interarms nine millimeter semiautomatic pistol.
*1068 After Griffis was shot, Turner was forced to get up from under the van and look for the keys. Upon realizing that Turner did not have them, Valdez fired numerous shots at a padlock on the van in an attempt to free O'Brien. One of the shots ricocheted off of the van and struck Turner, causing him minor injuries. Turner testified that at around this time Van Poyck aimed the Hungarian Interarms semiautomatic nine millimeter pistol at him and pulled the trigger. Although no bullet was fired, Turner stated that he heard the gun click. Turner then filed the scene when Van Poyck turned his attention to Valdez, who was smashing one of the windows on the van. After Van Poyck noticed that two cars had just driven into the alley, he and Valdez approached the cars and Van Poyck shattered the windshield of one of the cars with the butt of a gun. Van Poyck and Valdez then ran to a Cadillac parked in an adjacent parking lot and departed from the scene. A police officer, who arrived at the scene and witnessed the two men leaving, radioed for help and a chase followed. During the chase, Van Poyck leaned out of the car window and fired numerous shots at the police cars in pursuit, hitting three of them.
Valdez eventually lost control of the Cadillac and the car crashed into a tree. Van Poyck and Valdez were immediately taken into custody and four pistols were recovered from the car: a Hungarian Interarms nine millimeter semiautomatic pistol, a Sig Sauer nine millimeter semiautomatic pistol, a Starr .22 caliber semiautomatic pistol, and Turner's Smith and Wesson .38 caliber service revolver.
Van Poyck, testifying in his own behalf, denied that he shot Griffis and stated that, while kicking Turner, he heard the gunshots and saw Griffis fall to the ground. He did, however, acknowledge that he planned the operation and recruited Valdez to assist him in his plan. Additionally, he stated that they took three guns with them.
The jury found Van Poyck guilty of first-degree murder, six counts of attempted manslaughter, armed robbery with a firearm, aggravated assault, and aiding in an attempted escape. With regard to the first-degree murder charge, the jury was given a special verdict form which contained blanks for "premeditated murder," "felony murder," and "both." The jury returned the verdict form with "felony murder" and "both" checked and "premeditated murder" left blank.
In the penalty phase, the state presented Van Poyck's parole officer who testified that Van Poyck was on parole at the time of the incident and that he had three previous convictions, two for robbery and one for burglary. Other witnesses for the state included victims of these offenses. Van Poyck presented five witnesses in mitigation, including himself. A nurse from the Palm Beach County jail stated that he helped other inmates in various ways. His brother, who was also in prison, testified about their home life, explaining that their father was frequently away from home on business and their mother had passed away when Van Poyck was young. Van Poyck's aunt testified that for a period of time the family lived with a housekeeper, who appeared to be strange and unstable. Van Poyck's stepmother testified about his family situation, noting that his brother and sister had juvenile records. She also indicated that Van Poyck felt remorse for his actions. Finally, Van Poyck testified in his own behalf, taking responsibility for the fact that Griffis was killed and expressing remorse for his actions.
By an eleven-to-one vote, the jury recommended the death sentence for the first-degree murder conviction. The trial judge imposed the death sentence and found the following four aggravating circumstances: (1) that the crime was committed while Van Poyck was under a sentence of imprisonment in that he was on parole when he committed the act; (2) that the crime was committed for the purpose of effecting an escape from custody; (3) that Van Poyck knowingly created a great risk of death to many persons; and (4) that Van Poyck was previously convicted of another felony involving the use or threat of violence to some person. In finding insufficient mitigating evidence to override the above aggravating *1069 factors, the trial judge stated in his order:
The defendant presented evidence which attempted to show that he was under the influence of another person, to wit: his brother and/or Mr. O'Brien. This court finds that the evidence was totally lacking to establish in any way that mitigating factor based upon the fact that he clearly had had no contact with his brother for numerous years other than by infrequent letter-writing and that he had in fact not seen Mr. O'Brien for a long period of time. Further, the defendant admitted on the stand that he was operating during the commission of this offense as a person responsible for his own acts and with knowledge of what he was doing.
The judge also rejected evidence of a difficult childhood:
The only other potential mitigating circumstances for which evidence was presented was that ... Van Poyck's mother died when he was approximately eighteen (18) months of age. However, it was shown that he was subsequently raised in a good family and by people that cared for him. Further, the court would note that Mr. Van Poyck is an individual who is quite intelligent and very knowledgeable as to the law and that he himself admits that he was well aware of the law including felony murder, that he himself was the individual who planned this operation.
The trial court also imposed upon Van Poyck six fifteen-year sentences for the six counts of attempted manslaughter, five years with a mandatory minimum of three for aggravated assault, fifteen years for aiding in an attempted escape, and life imprisonment for attempted first-degree murder. The trial judge stated that each of the above sentences should run consecutively.

Guilt Phase
Van Poyck raises the following six issues in the guilt phase of this appeal: (1) the trial court erred in not severing the multiple offenses in this case; (2) the evidence was insufficient to support a conviction for first-degree premeditated murder; (3) the evidence was insufficient to support a conviction for attempted first-degree murder; (4) the evidence was insufficient to support a conviction for aiding in an attempted escape; (5) the evidence was insufficient to support the convictions of six counts of attempted manslaughter; and (6) the convictions in issue (5) violated the rule of lenity.
With reference to the first claim regarding severance, all of the crimes arose out of a single criminal episode, which began with the unsuccessful attempt to free a prisoner and concluded in a police chase. We find that the trial court's denial of Van Poyck's motion to sever was consistent with Florida Rules of Criminal Procedure 3.150(a) and 3.152(a). Bundy v. State, 455 So.2d 330 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); Spivey v. State, 533 So.2d 306 (Fla. 1st DCA 1988).
With regard to point two, we agree with Van Poyck that the evidence is insufficient to establish first-degree premeditated murder. The state's evidence was conflicting as to where Van Poyck was at the time of the killing. We note that the trial judge, in his sentencing order, was not sure of Van Poyck's whereabouts: "Van Poyck may have in fact been the individual who pulled the trigger and shot Fred Griffis." (Emphasis added.) Although the evidence was insufficient to establish first-degree premeditated murder, we find that the evidence was clearly sufficient to convict him of first-degree felony murder. While this finding does not affect Van Poyck's guilt, it is a factor that should be considered in determining the appropriate sentence.
The remaining issues concerning the sufficiency of the evidence and the violation of the rule of lenity are without merit. The evidence in this record clearly sustains those convictions.

Penalty Phase
Van Poyck raises fifteen issues in the penalty phase: (1) the trial court failed to properly consider the mitigating evidence; *1070 (2) the aggravating circumstance of knowingly creating a great risk of death to many persons is vague, overbroad, and capricious; (3) the trial court erroneously found the aggravating circumstance of knowingly creating a great risk to many persons; (4) the trial court erred in denying Van Poyck's request for limiting jury instructions on the aggravating circumstance of knowingly creating a great risk of death to many persons; (5) the trial court failed to direct the jury to make a mandatory factual determination concerning Van Poyck's participation as prescribed by the United States Supreme Court's decisions in Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); (6) the trial court failed to make the required factual findings required by Tison and Enmund in its sentencing order; (7) the trial court violated Van Poyck's right to a fair trial by refusing to excuse pro-death jurors and attempting to exclude jurors opposed to the death penalty; (8) Florida's death penalty statute is unconstitutional as applied to this case; (9) the trial court gave Van Poyck insufficient time to obtain adequate medical examinations; (10) the trial court erred with regard to sequestering the jury; (11) the trial court improperly considered Van Poyck's prior convictions; (12) the trial court erred in finding the existence of an aggravating circumstance which duplicated an essential element of felony murder; (13) Van Poyck was denied his right to effective assistance of counsel during the penalty phase of the trial; (14) the death sentence is not proportional under these facts; and (15) Florida's death penalty statute is unconstitutional. After fully considering these issues in light of the record in this cause, we find no error which requires a new sentencing proceeding.
We find no merit in Van Poyck's claims that he was a minor actor and did not have the culpable mental state to kill. In DuBoise v. State, 520 So.2d 260 (Fla. 1988), we reiterated the established principle in Florida that the death penalty is appropriate even when the defendant is not the triggerman[*] and discussed proportionate punishment, stating:
In Tison the Court stated that Enmund covered two types of cases that occur at opposite ends of the felony-murder spectrum, i.e., "the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state" and "the felony murderer who actually killed, attempted to kill, or intended to kill." The Tison brothers, however, presented "the intermediate case of the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life." The Court recognized that the majority of American jurisdictions which provide for capital punishment "specifically authorize the death penalty in a felony-murder case where, though the defendant's mental state fell short of intent to kill, the defendant was the major actor in a felony in which he knew death was highly likely to occur," and that "substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an `intent to kill.'" Commenting that focusing narrowly on the question of intent to kill is an unsatisfactory method of determining culpability, the Court held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement."

Id. at 265-66 (citations omitted, emphasis added) (quoting Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)). Although the record does not establish that Van Poyck was the triggerman, it does establish that he was the instigator and the primary participant in this crime. He and Valdez arrived at the scene "armed to the teeth." Since there is no question that Van Poyck played the major role in this felony *1071 murder and that he knew lethal force could be used, we find that the death sentence is proportional.
We note that, although the pro-death jurors should have been excused for cause, the trial judge subsequently excused them for personal reasons. Consequently, Van Poyck was not required to exercise any peremptory challenges with regard to those jurors and that issue is moot.
We find that none of the other claims merit discussion. Further, we conclude that each of the aggravating circumstances found by the trial judge was properly established in this record and that the trial judge could properly conclude that the aggravating circumstances outweighed the mitigating evidence in this cause. Accordingly, we affirm each of Van Poyck's convictions and sentences.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] See, e.g., Copeland v. Wainwright, 505 So.2d 425 (Fla.), vacated on other grounds, 484 U.S. 807, 108 S.Ct. 55, 98 L.Ed.2d 19 (1987); Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987).