908 So.2d 326 (2005)
William VAN POYCK, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-696.
Supreme Court of Florida.
May 19, 2005.
Rehearing Denied July 15, 2005.
Mark E. Olive, Tallahassee, FL, and Jeffrey O. Davis of Quarles and Brady, LLP, Milwaukee, WI, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
William Van Poyck appeals an order of the circuit court summarily denying a motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. We have jurisdiction. See art. V, *327 § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the circuit court's denial of Van Poyck's motion for postconviction DNA testing.

FACTS AND PROCEDURAL HISTORY
The facts of Van Poyck's crimes were previously detailed by this Court on direct appeal as follows:
The record establishes that on June 24, 1987, corrections officers Steven Turner and Fred Griffis transported James O'Brien, a state prison inmate, in a van from Glades Correctional Institute to a dermatologist's office for an examination. Griffis, who was not armed, drove the van while Turner watched O'Brien, who was secured in a caged area behind Griffis. After Griffis pulled the van into an alley behind the doctor's office, Turner looked down for his paperwork. Upon looking up, he saw a person, whom he later identified as Van Poyck, aiming a pistol at his head. Van Poyck ordered Turner to exit the van. At the same time, Frank Valdez, an accomplice of Van Poyck's, went to the driver's side of the van. Turner testified that Van Poyck took his gun, ordered him to get under the van, and kicked him while he was attempting to comply with Van Poyck's order. He testified that, while under the van, he saw Griffis exit the van; he noticed another person forcing Griffis to the back of the van; and, while noticing two sets of feet in close proximity to the rear of the van, he heard a series of shots and saw Griffis fall to the ground. Turner further stated that Van Poyck had stopped kicking him when the gunfire started, but noted that he did not know where Van Poyck was at the time of the shooting. Griffis was shot three times, once in the head and twice in the chest. Expert testimony indicated that the shot to the head was fired with the barrel of the gun placed against Griffis' head and that each of the wounds would have been fatal. It was also determined that the murder weapon was a Hungarian Interarms nine millimeter semiautomatic pistol.
After Griffis was shot, Turner was forced to get up from under the van and look for the keys. Upon realizing that Turner did not have them, Valdez fired numerous shots at a padlock on the van in an attempt to free O'Brien. One of the shots ricocheted off of the van and struck Turner, causing him minor injuries. Turner testified that at around this time Van Poyck aimed the Hungarian Interarms semiautomatic nine millimeter pistol at him and pulled the trigger. . . .
. . . .
Van Poyck, testifying in his own behalf, denied that he shot Griffis and stated that, while kicking Turner, he heard the gunshots and saw Griffis fall to the ground. He did, however, acknowledge that he planned the operation and recruited Valdez to assist him in his plan. Additionally, he stated that they took three guns with them.
Van Poyck v. State, 564 So.2d 1066, 1067-68 (Fla.1990) (Van Poyck I). Van Poyck was convicted of first-degree murder, six counts of attempted manslaughter, armed robbery with a firearm, aiding in an attempted escape, and aggravated assault. See id. at 1068. Regarding the first-degree murder conviction, the jury found Van Poyck guilty of both first-degree premeditated murder and first-degree felony murder on a bifurcated verdict form, and recommended the death penalty by a vote of eleven to one. See id. The trial court followed the jury's recommendation and imposed the death penalty for the first-degree murder conviction. See id.
*328 On direct appeal, we concluded that there was insufficient evidence to support Van Poyck's conviction for first-degree premeditated murder because the State's evidence was conflicting as to Van Poyck's location at the time of the murder. See id. at 1069. We concluded, however, that there was sufficient evidence to support the first-degree felony murder conviction. See id. We also held that the death sentence was a proportional punishment because the record established that Van Poyck was a major participant in the felony murder and that he acted with reckless indifference to human life since he knew that lethal force could be used during the commission of the felony. See id. at 1070-71. Thus, we affirmed Van Poyck's convictions and sentences.
In his initial postconviction motion, Van Poyck raised numerous claims, including that counsel was ineffective during the guilt phase for failing to present additional direct evidence, such as DNA tests, regarding the identity of the triggerman. See Van Poyck v. State, 694 So.2d 686, 696-97 (Fla.1997) (Van Poyck II). We affirmed the circuit court's order denying relief on this claim. See id. at 697. Subsequently, this Court denied Van Poyck's petition for habeas corpus relief, rejecting arguments that (1) Van Poyck was wrongfully forced to exhaust his peremptory challenges, (2) appellate counsel was ineffective on direct appeal, and (3) Van Poyck was convicted of criminal offenses that did not exist as a matter of law. See Van Poyck v. Singletary, 715 So.2d 930 (Fla. 1998); see also Van Poyck v. Singletary, 728 So.2d 206 (Fla.1998) (denying habeas corpus petition in unpublished order); Van Poyck v. Crosby, 860 So.2d 980 (Fla.2003) (denying habeas corpus petition in unpublished order), cert. denied, 541 U.S. 974, 124 S.Ct. 1884, 158 L.Ed.2d 469 (2004). The United States Court of Appeals affirmed the denial of Van Poyck's petition for habeas corpus relief, concluding that (1) counsel was not ineffective during the penalty phase, (2) the trial court did not err in denying Van Poyck a continuance between the guilt and penalty phases, (3) counsel was not ineffective during the appellate proceedings, and (4) Van Poyck's sentence was not based on an invalid aggravating factor. See Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318 (11th Cir.2002) (Van Poyck III).
Thereafter, Van Poyck filed a motion pursuant to Florida Rule of Criminal Procedure 3.853 seeking DNA testing of all of the clothing worn by Van Poyck and Valdez at the time the murder occurred. Van Poyck alleged that the DNA testing could establish that Valdez and not Van Poyck was the triggerman. Van Poyck further alleged that this evidence would mitigate his death sentence because the sentence was based on the mistaken belief that Van Poyck was the triggerman. In the alternative, Van Poyck asserted that he was entitled to an evidentiary hearing on the issue. The State opposed the motion, asserting that there is no reasonable probability that the identity of the triggerman would mitigate Van Poyck's sentence. The trial court summarily denied Van Poyck's motion seeking DNA testing, finding that "pursuant to exhibits contained in the court file which are incorporated herein as reference that there is no reasonable possibility that any DNA testing will result in exoneration or in a mitigated sentence." Van Poyck appeals the trial court's order summarily denying his rule 3.853 motion.

ANALYSIS
Rule 3.853 sets forth the procedures for obtaining DNA testing under section 925.11, Florida Statutes (2004). The rule provides that a petition for postconviction DNA testing must include, among other things, "a statement that the movant is *329 innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime." Fla. R.Crim. P. 3.853(b)(3). The burden is on the movant to "demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case." Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004). Rule 3.853 requires the court to make the following findings when ruling on a motion seeking postconviction DNA testing:
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.
Fla. R.Crim. P. 3.853(c)(5) (emphasis supplied).
In this case, the pleading requirements of rule 3.853 have been satisfied. The issue before the Court is whether DNA evidence establishing that Van Poyck was not the triggerman creates a reasonable probability that Van Poyck would have received a lesser sentence.[1]
During the penalty phase, the State argued in closing that the evidence supported a finding that Van Poyck was the triggerman, but even if the jurors were to find otherwise, they could still recommend the death penalty if they concluded that Van Poyck played a major role in the felony murder and that he acted with reckless indifference to human life. Therefore, the State's theory that the death penalty was appropriate was not based primarily on Van Poyck's triggerman status. Similarly, the trial court did not rely on Van Poyck's triggerman status in imposing the death penalty. The trial court found that the death penalty was an appropriate sentence because the mitigating evidence[2] presented was insufficient to outweigh the aggravating circumstances.[3]See Van Poyck I, 564 So.2d at 1068-69. None of *330 the aggravating circumstances found by the trial court were based on Van Poyck's triggerman status.
In fact, the only indication that the trial court even considered Van Poyck's triggerman status is a passage in the trial court's order in which the court stated that the "State clearly presented competent and substantial evidence as to the crime of first degree felony murder and or first degree premeditated murder and in reality presented competent evidence that Mr. Van Poyck may have in fact been the individual who pulled the trigger and shot Fred Griffis." (Emphasis supplied.) This statement demonstrates only that the trial court was uncertain whether Van Poyck shot and killed Officer Griffis, rather than a conclusion that Van Poyck was the triggerman. Despite this uncertainty, the trial court found that "[b]y all evidence Mr. Van Poyck was a major participant" in the felony murder.
The United States Court of Appeals' analysis of Van Poyck's petition for habeas corpus relief is also instructive. In reviewing Van Poyck's ineffective assistance of counsel claim, the circuit court addressed whether there was a reasonable probability that evidence establishing that Van Poyck was not the triggerman would have affected the trial court's imposition of the death penalty. See Van Poyck III, 290 F.3d at 1325-26. The circuit court concluded that upon considering the trial court's uncertainty whether Van Poyck was the triggerman and the prosecutor's closing arguments during the penalty phase, there was "no reasonable probability that, if Counsel had presented the additional evidence that [Van Poyck] was not the triggerman, the outcome of the sentencing phase would have been different." Id. at 1326.
Further, this Court did not rely on Van Poyck's triggerman status in affirming his death sentence on direct appeal. This Court stated that "[a]lthough the record does not establish that Van Poyck was the triggerman, it does establish that he was the instigator and the primary participant in this crime." Van Poyck I, 564 So.2d at 1070. The Court concluded that the death sentence was a proportional punishment "[s]ince there is no question that Van Poyck played the major role in this felony murder and that he knew lethal force could be used." Id. at 1070-71. In reaching this conclusion, we observed that the death penalty is appropriate even when the defendant is not the triggerman if the defendant is a major participant in the felony and acted with reckless indifference to human life. See id. at 1070. Evidence establishing that Van Poyck was not the triggerman would not change the fact that he played a major role in the felony murder and that he acted with reckless indifference to human life.
For the foregoing reasons, we hold that there is no reasonable probability that Van Poyck would have received a lesser sentence had DNA evidence establishing that he was not the triggerman been presented at trial. We do not hold, as Justice Anstead asserts, that it makes no difference in the capital sentencing process which of two codefendants actually committed the killing. Rather, we determine only that under the circumstances of this case involving a murder of a prison guard in a brutal armed attack planned by Van Poyck and carried out with Valdez, DNA evidence indicating that Van Poyck was not the triggerman would not have created a reasonable probability of a lesser sentence, which is the standard for ordering DNA testing under rule 3.853(c)(5)(C). Accordingly, we affirm the circuit court's order summarily denying Van Poyck's motion for postconviction DNA testing.
It is so ordered.
*331 PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
Today's ruling tells us that for purposes of assessing culpability between codefendants, it makes no difference who the actual triggerman was. I cannot accept that proposition generally, or as it is applied in this case. I respectfully dissent from the majority's determination that the proper identification of the triggerman in a homicide by shooting could have no bearing on the proper penalty to be imposed.
Common sense and our death penalty jurisprudence tell us that there is a vast difference in the importance of the defendant being the triggerman in a shooting death for purposes of evaluating the defendant's guilt (where it is not essential), compared with an assessment of a defendant's culpability for purposes of evaluating whether he should receive the death penalty.[4] For example, in our initial review in this case, this Court found that the evidence was insufficient to prove that the defendant was the triggerman and guilty of premeditated murder, but the evidence was nevertheless sufficient to sustain a conviction for felony-murder. Van Poyck v. State, 564 So.2d 1066, 1069 (Fla.1990).
We need only examine the trial record in this case to see explicit proof that the identity of the triggerman was both important and at issue in the jury's assessment of the appropriate penalty for Van Poyck. In this case, the prosecutor expressly argued to the jury during the penalty phase: "So again, it is important who the triggerman is. There is no doubt about it. It's important to your deliberations, okay." Subsequent to those statements the prosecutor told the jury: "So ladies and gentlemen, even though he says he was not the triggerman, I submit the evidence shows that he was, because the only eyewitness we have that actually saw the guns well enough to identify is Officer Turner. He is the one left alive here to tell you who had what gun."[5] Thus, there can be no doubt that the prosecution, in seeking the death penalty, asserted to the jury first, that it was important in their deliberations on the penalty to determine who the triggerman was, and, second, in this case, the evidence supported a determination that the defendant was the triggerman. The jury, of course, after this argument, returned with a recommendation for death.[6]
On the face of this record how can we possibly now conclude that the identification of the triggerman is irrelevant to the determination of whether the death penalty *332 should be imposed? The prosecutor has already answered that question for us. The majority has chosen to deal with a hypothetical situation: could the death penalty be imposed on a non-triggerman, rather than dealing with the actual situation presented here where the State sought the death penalty, asserting as grounds that the defendant was the triggerman, and the jury returned with a vote for the death penalty.
Not much is being asked in this case, only that some evidence be re-examined to allow modern science and technology to inform us as to whether we can be more informed about who actually did the killing. The Legislature has authorized exploration of this new evidence if it could have an impact on the assessment of the penalty to be imposed for the crime. Surely, if it was available, the judge, the jury and this Court would all have wanted to consider this evidence at the time this case was tried so we could have greater confidence in our decision-making as to the defendant's culpability and our decision for life or death.
NOTES
[1] Although not controlling on the issue before the Court, we note that prior to trial, defense counsel moved for a continuance in order to allow the defense to have the clothing worn by Van Poyck and Valdez tested using DNA testing procedures. Despite the fact that the trial court granted the continuance so that DNA testing could be conducted, the clothing was never tested.
[2] During the penalty phase, defense counsel presented four witnesses in mitigation who testified that (1) Van Poyck's father was frequently away from home and that his mother had passed away when Van Poyck was young; (2) for a period of time Van Poyck lived with a housekeeper who appeared to be strange and unstable; (3) Van Poyck's siblings had juvenile records; (4) Van Poyck was remorseful for his actions; and (5) Van Poyck was helpful to other prison inmates. See Van Poyck I, 564 So.2d at 1068. Van Poyck also testified during the penalty phase, accepting responsibility for the fact that Officer Griffis was killed and expressing remorse for his actions. See id.
[3] The trial court found the following four aggravating circumstances: (1) that the crime was committed while Van Poyck was under a sentence of imprisonment; (2) that the crime was committed for the purpose of effecting an escape from custody; (3) that Van Poyck knowingly created a great risk of death to many persons; and (4) that Van Poyck was previously convicted of another felony involving the use or threat of violence. See Van Poyck I, 564 So.2d at 1068.
[4] While there are numerous decisions from this Court standing for the proposition that the identity of the triggerman is critical in an assessment of the appropriate penalty, none illustrates the point better than Justice Grimes' separate opinion in Zerquera v. State, 549 So.2d 189, 193 (Fla.1989), where he expressed disagreement with the majority's remand for a new trial on guilt, while agreeing that a new penalty phase was necessary "[b]ecause the question of who did the actual shooting directly bears on whether Zerquera should receive the death penalty." 549 So.2d at 193 (Grimes, J., concurring in part, dissenting in part).
[5] In addition, the trial court stated in its sentencing order:

The Court further finds that the State clearly presented competent and substantial evidence as to the crime of first degree felony murder and or first degree pre-meditated murder and in reality presented competent evidence that Mr. Van Poyck may have in fact been the individual who pulled the trigger and shot Fred Griffis.
[6] This, of course, is the same jury that we determined was in error in finding the defendant guilty of premeditated murder.