[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15718

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 15, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00485-CV-4-RH-WCS

WILLIAM VAN POYCK,

Plaintiff-Appellant,

versus

BILL MCCOLLUM,
in his official capacity as Attorney
General for the State of Florida,
BARRY KRISCHER,
MICHAEL F. MCAULIFFE,
in his official capacity as State
Attorney for the Fifteenth Judicial
Circuit of Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 15, 2011)

Before EDMONDSON, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff William Van Poyck seeks access to evidence to conduct DNA testing for the purpose of seeking executive clemency. We conclude that Plaintiff has not shown that Defendants ("state officers") have violated a federally protected right on the facts of this case. We affirm the district court's dismissal of Plaintiff's 42 U.S.C. § 1983 action.

## I. BACKGROUND

A jury convicted Plaintiff of murder for his role in the shooting of a correctional officer during an escape attempt.[1] The Florida state court sentenced Plaintiff to death, and the Florida Supreme Court affirmed his conviction and sentence on direct review. See Van Poyck v. State, 564 So. 2d 1066 (Fla. 1990) ("Van Poyck I"). Plaintiff sought post-conviction relief in state court, see Van Poyck v. State, 694 So. 2d 686 (Fla. 1997) ("Van Poyck II"), and federal habeas corpus relief, see Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318 (11th Cir. 2002) ("Van Poyck III"), but was unsuccessful.

_____

[1] The facts are set out in greater detail in Van Poyck v. State, 564 So. 2d 1066 (Fla. 1990).

In 2003, Plaintiff filed suit in Florida state court seeking access, under Florida Rule of Criminal Procedure 3.853, to the clothing he and his co-defendant wore at the time of the murder. He sought to perform modern DNA testing on the evidence. Plaintiff asserted that DNA testing could show that his co-defendant -- instead of Plaintiff -- was the triggerman.[2] The Florida trial court dismissed Plaintiff's motion and the Florida Supreme Court affirmed, concluding that "there is no reasonable probability that Van Poyck would have received a lesser sentence had DNA evidence establishing that he was not the triggerman been presented at trial." Van Poyck v. State, 908 So. 2d 326, 330 (Fla. 2005) ("Van Poyck IV").[3]

In 2008, Plaintiff, asserting a right under the Federal Constitution to the DNA testing of evidence, filed suit in federal district court under 42 U.S.C. § 1983 seeking access to the evidence to perform DNA testing. The district court dismissed the complaint per Rule 12(b)(6); Plaintiff appeals.

---

[2] The identity of the triggerman was not established at Plaintiff's trial or in later proceedings. Plaintiff did not assert that DNA testing would prove his innocence of the crimes of which he had been convicted; instead, he claimed that DNA testing would provide evidence that might lead to a less severe sentence.

[3] The Florida Supreme Court also noted that "the trial court did not rely on Van Poyck's triggerman status in imposing the death penalty," nor did the Florida Supreme Court rely on his triggerman status in affirming his death sentence on direct appeal. Van Poyck IV, 908 So. 2d at 329-30.

## II.  DISCUSSION

### A.

We begin by considering the timeliness of Plaintiff's claim.  The state officers contend that Plaintiff's claim is time-barred; they assert that the statute of limitations on Plaintiff's section 1983 claim began running in 1998, when "the 'modern' DNA testing Van Poyck seeks become [sic] widely available."[4]  We disagree.

Plaintiff's claim is subject to Florida's four-year personal injury statute of limitations.  See Henyard v. Sec'y, Dep't of Corr., 543 F.3d 644, 647 (11th Cir. 2008).  The statute of limitations on a section 1983 claim begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (internal quotation marks omitted)).

---

[4] In support of this claim, the state officers argue that "[s]hort tandem repeat (STR) DNA testing became the 'industry' standard" in 1997, "when the FBI discontinued RFLP analysis in favor of STR multiplexing."

Plaintiff's claim is based on the refusal of the state officers to make specific evidence available to him. In the circumstances, their refusal was apparent no earlier than 2005: the end of the state litigation in which Plaintiff unsuccessfully sought access to the evidence. Plaintiff filed this federal action in 2008. The federal action was timely.[5] See Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir. 1990) (affirming the district court's conclusion that, for statute of limitations purposes, the plaintiff's section 1983 claim "accrued . . . with the final decision of the Florida appellate court").

We do not decide today whether a plaintiff might bring suit under section 1983 immediately after a state agent first denies (or impedes) access to the evidence. Nor do we decide whether the refusal to provide the evidence might be a continuing tort if it is a tort. We decide only that Plaintiff's claim, as presented in this case, is not time-barred.

B.

---

[5] The state officers also argue that the Rooker-Feldman doctrine, which bars a party who loses in state court from seeking review of the state court decision in federal district court, prevents this Court from reviewing Plaintiff's claim. Plaintiff's complaint here presents an independent claim based on federal law; he does not seek review of the state court decision. This Court may decide his federal claim. See Skinner v. Switzer, 131 S. Ct. 1289, 1297-98 (2011) (concluding that the plaintiff's section 1983 claim based on a right to DNA testing was not barred by the Rooker-Feldman doctrine because the plaintiff was not requesting the federal court to overturn the injurious state court judgment).

"To state a claim under § 1983, [a plaintiff] must show that the denial of post-conviction access to the biological evidence deprived him of a federally protected right." Grayson v. King, 460 F.3d 1328, 1336 (11th Cir. 2006).

In his complaint, Plaintiff raised a variety of constitutional claims.[6] But on appeal before this Court, Plaintiff's arguments are limited to his "access to clemency" claim only. Plaintiff urges this court to decide that he "has a liberty interest, as a capital defendant, in pursuing DNA evidence testing under 42 U.S.C. § 1983 for the purpose of meaningful access to a full and fair clemency proceeding." He also argues that "because [Plaintiff] is seeking relief under 42 U.S.C. § 1983 for the primary purpose of meaningful access to clemency, he is not required to show that there is a probability that the DNA evidence would undermine the outcome of the trial."

To the extent Plaintiff seeks relief on the basis of a substantive due process right to post-conviction DNA testing, in District Attorney's Office for the Third Judicial District v. Osborne, 129 S. Ct. 2308 (2009), the Supreme Court declined

---

[6] These claims included the state officers' violation of his rights to substantive and procedural due process, meaningful access to the courts, confrontation and compulsory process, freedom from cruel and unusual punishment, and the opportunity for full and fair clemency proceedings.

to recognize a right to DNA evidence for non-capital defendants. 129 S. Ct. at 2322; see also Skinner v. Switzer, 131 S. Ct. 1289, 1299 (2011) in a case involving a plaintiff sentenced to death, reiterating that "Osborne . . . rejected substantive due process as a basis for [DNA testing] claims"). In Osborne, the Court's opinion stressed a general reluctance to recognize new, substantive due process rights. 129 S. Ct. at 2322. And the Court observed the important role of the political branches of state governments in working out the law dealing with new technological developments: "[t]he elected governments of the States are actively confronting the challenges DNA technology poses to our criminal justice systems and our traditional notions of finality, as well as the opportunities it affords." Id. The Court worried that to constitutionalize this area suddenly would short-circuit "a prompt and considered legislative response." Id. Then later, the Supreme Court in Skinner (a case in which the plaintiff had been sentenced to death) described Osborne as having rejected substantive due process as a basis for a claim seeking DNA testing of crime scene evidence. See Skinner, 131 S. Ct. at 1293. Now, if Skinner did not do so, we extend Osborne to capital defendants and reject Plaintiff's substantive due process claim.

We recognize that the Supreme Court in Osborne, by implication, left open the possibility that a capital defendant might have a liberty interest in traditional

7

state executive clemency that <u>procedural</u> due process may protect.  <u>Osborne</u>, 129 S. Ct. at 2319.  <u>Osborne</u> "left slim room for the prisoner to show that the governing state law denies him procedural due process."  <u>See Skinner,</u> 131 S. Ct. at 1293; <u>Osborne</u>, 129 S. Ct. at 2321.  But we need not decide today whether Plaintiff's procedural due process rights have been violated; Plaintiff has not contended in this appeal that Florida's statutory procedure for access to DNA evidence is inadequate as a matter of federal law.

## III.  CONCLUSION

Plaintiff has not established that the state officers violated a federally protected right, and he is entitled to no relief from federal courts on the facts of this case.[7] The district court's dismissal of the action is affirmed.

AFFIRMED.

---

[7]  Although it is immaterial to today's decision, Plaintiff remains free to seek executive clemency, including asking the Florida governor to order the release of the evidence for testing or not to authorize Plaintiff's execution until such testing has been done.