PER CURIAM.
William Van Poyck, a prisoner under sentence of death, appeals the circuit court’s summary denial of his second successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Because Van Poyck’s claim originates from information that existed as early as this Court’s issuance of its direct-appeal decision in 1990, and because the juror affidavits at issue in this case relate to matters that inhere in the verdict, we affirm the circuit court’s denial of this claim as it is both untimely and based upon inadmissible evidence.
Van Poyck was convicted of first-degree murder and sentenced to death for his role in the June 1987 killing of correctional officer Fred Griffis. On direct appeal, this Court affirmed the conviction and sentence. See Van Poyck v. State (Van Poyck I), 564 So.2d 1066 (Fla.1990). Although the Court held that “the record [did] not establish that Van Poyck was the trigger-man,” we recognized that it did “establish that he was the instigator and the primary participant in this crime.” Id. at 1070. We further concluded that because “there [was] no question that Van Poyck played the major role in this felony murder and that he knew lethal force could be used,” his death sentence was proportionate. Id. at 1070-71.
Since this Court’s affirmance of his conviction and sentence, Van Poyck has continuously raised his alleged non-trig-german status as a basis for seeking postconviction relief in both state and federal courts. The denial of each of these claims has been consistently affirmed on appeal. See Van Poyck v. State (Van Poyck II), 694 So.2d 686, 696-97 (Fla. 1997); Van Poyck v. Fla. Dep’t of Com’. (Van Poyck III), 290 F.3d 1318, 1325-26 *127 (11th Cir.2002); Van Poyck v. State (Van Poyck IV), 908 So.2d 326, 329-30 (Fla. 2005); Van Poyck v. State (Van Poyck V), 961 So.2d 220, 224-26 (Fla.2007); see also Van Poyck v. McCollum (Van Poyck VI), 646 F.3d 865, 866-67 (11th Cir.2011) (affirming the dismissal of a 42 U.S.C. § 1983 action in which Van Poyck sought access to DNA evidence in an attempt to show that he was not the triggerman for the purpose of seeking executive clemency).
Most recently, this Court in Van Poyck V affirmed the circuit court’s summary denial of Van Poyck’s first successive motion for postconvietion relief in which he asserted a newly discovered evidence claim predicated upon an affidavit by Enrique Diaz, a prison acquaintance of Van Poyck’s codefendant Frank Valdes, stating that “between 1990 and 1997, Valdes ‘repeatedly and consistently1 said he had shot and killed Griffis.” 961 So.2d at 223. Relying on our prior precedent, we rejected Van Poyck’s argument that newly discovered evidence that Valdes was the triggerman to Griffis’s murder would probably yield a lesser sentence for Van Poyck. See id. at 227-28. We find our decision in Van Poyck V to be dispositive here.
The argument Van Poyck raises on appeal relates to his original penalty phase and is based on alleged newly discovered evidence consisting of four affidavits Van Poyck obtained on his own initiative, and absent the assistance of counsel, through the retention of a private investigator. These affidavits were sworn to by four of Van Poyck’s original jurors in 2010 and essentially state that had it been determined that Van Poyck was not the person who shot Griffis, two jurors would have recommended a life sentence and it was at least a reasonable probability that two other jurors would have done the same.[1] Van Poyck alleges that these affidavits are proof that he would probably receive a lesser sentence on resentencing. The circuit court summarily denied relief on this claim, finding it to be both untimely and based on inadmissible evidence. We agree.
To obtain a new capital penalty-phase proceeding based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must also appear that neither the defendant nor defense counsel could have known of such evidence by the use of diligence. Second, the newly discovered evidence must be of such a nature that it would probably yield a less severe sentence. See Davis v. State, 26 So.3d 519, 526 (citing Jones v. State (Jones II), 709 So.2d 512, 521 (Fla.1998); Jones v. State (Iones I), 591 So.2d 911, 915 (Fla.1991)). Newly discovered evidence satisfies the second prong of the Jones II test if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.” Jones II, 709 So.2d at 526 *128 (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996)). “In considering the second prong, the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary bars to its admissibility.” Id. at 521.
Van Poyck’s claim is procedurally time-barred under the first prong of the Jones II test. The fact underlying this claim— that insufficient evidence existed to support á finding that Van Poyck was the triggerman — is not new at all. The issue of Van Poyck’s non-triggerman status was contested at his trial in 1988. This Court on direct appeal acknowledged that the record did “not establish that Van Poyck was the triggerman,” but nevertheless affirmed his conviction for first-degree murder and his sentence of death. Van Poyck I, 564 So.2d at 1070.
As recounted above, in every state post-conviction motion filed since his sentence became final, Van Poyck, through counsel, has raised a variant of a claim regarding his non-triggerman status. While these affidavits are technically “new,” in that they were drafted and sworn to in 2010, the information upon which they are based existed as early as September 1990, when this Court’s direct-appeal decision became final, or at least as early as March 2005, when inmate Enrique Diaz executed the affidavit that spurred the Van Poyck V litigation. Van Poyck himself concedes that the very reason counsel never secured such affidavits is because counsel was prohibited from doing so under Rule Regulating the Florida Bar 4-3.5(d)(4). Accordingly, we affirm the circuit court’s finding that this claim was procedurally barred.
 This claim also fails under Jones II’s second prong. It is well established that a verdict cannot be subsequently impeached by matters that inhere in the verdict and relate to the jury’s deliberations. See Duckett v. State, 918 So.2d 224, 231 n. 7 (Fla.2005); Marshall v. State, 854 So.2d 1235, 1240 (Fla.2003); Johnson v. State, 593 So.2d 206, 210 (Fla.1992). Codifying this principle, section 90.607(2)(b), Florida Statutes (2010), provides that “[u]pon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.” As interpreted by this Court, section 90.607(2)(b) “absolutely forbids any judicial inquiry into emotions, mental process, or mistaken beliefs of jurors.” Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 99 (Fla.1991) (quoting State v. Hamilton, 574 So.2d 124, 128 (Fla.1991)). In Maler, this Court further explained that “the reasons why jurors reach[ ] a particular verdict clearly are subjective impressions or opinions that are not subject to judicial inquiry.” Id. at 100.
Reduced to their essence, the four juror affidavits in this case can be likened to instances where a juror renounces his or her decision after a verdict has been entered. Cf. Simpson v. State, 3 So.3d 1135, 1143-44 (Fla.2009) (holding that juror’s guilty verdicts were not impeachable by her subsequent repudiation of those verdicts because the basis for her repudiation related to matters that inhered in the verdicts). Each affidavit essentially contains a subjective impression relating directly to the reason why that juror reached his or her recommendation for a sentence of death. We agree with the circuit court’s conclusion that
jurors cannot testify or provide affidavits about the nature and kind of evidence that was presented and the effect this evidence had upon their decision to convict or which sentence they chose to impose. If such affidavits are submitted, they cannot be considered as evidence. There is nothing more sacro *129 sanct in the criminal justice system than the private thoughts of jurors. Members of a jury should not be tracked down or subject to an interrogation process when there is not even a scintilla of evidence suggesting misconduct or malfeasance during deliberations.
Because the thoughts expressed by these jurors are not matters external to the verdict and relate to topics about which they are ultimately incompetent to testify, section 90.607(2)(b) renders these juror affidavits inadmissible, and they cannot be classified as newly discovered evidence.
In addition, the affidavits do not support Van Poyck’s assertion that the jury vote in the penalty phase would have changed because the statements contained therein are predicated upon facts that have never been conclusively determined to be true. Before each juror interview, Van Poyck’s investigator informed the jurors that she was there to obtain their “opinion about the suitability of [Van Poyck’s] death sentence in light of evidence that has surfaced since his trial including the fact that the Florida Supreme Court has found that Van Poyck was not the triggerman as well as the State’s concession that Van Poyck was not the triggerman.” (Emphasis added.)
Contrary to the investigator’s instruction, this Court has never found that Van Poyck was not the triggerman; we have only recognized that the evidence introduced at his trial was insufficient to establish that he was. See Van Poyck I, 564 So.2d at 1070-71.[2] Because the juror affidavits in this case are predicated upon a misleading fact, the information they provide reveals nothing more than the subjective impressions of what four of the jurors might have done had they been presented with a fact never determined to be true. Moreover, their so-called “changed” opinions would not affect the jury’s ultimate sentencing recommendation; even considering these four affidavits in a light most favorable to Van Poyck, the jury vote would remain seven to five in favor of death.[3]
As a final concern, we echo the circuit court’s express disapproval of the manner in which Van Poyck first secured, and defense counsel later utilized, the subject juror affidavits to set forth a factual basis for this claim. Rule 4 — 3.5(d)(4) of the Rules Regulating the Florida Bar and Florida Rule of Criminal Procedure 3.575 govern the method by which a lawyer or party may initiate contact with jurors after the jury enters a verdict to determine whether the verdict may be subject to legal challenge. See Israel v. State, 985 So.2d 510, 522 (Fla.2008); see also R. Regulating the Fla. Bar 4-3.5(d)(4) (requiring a lawyer to file with the trial court a notice of intent to interview a juror before doing so where “the lawyer has reason to believe that grounds for [a] challenge [to the verdict] may exist”); Fla. R.Crim. P. 3.575 (requiring a party to file with the trial court a motion to interview a juror before doing so where the party “has reason to believe that the verdict may be subject to legal challenge”). Neither defense counsel nor Van Poyck notified the circuit court of Van Poyck’s retention of a private investigator who interviewed the original jurors in this case.
*130 We agree with the circuit court that although defense counsel was not representing Van Poyck at the time these affidavits were obtained and thus may not have violated rule 4-3.5(d)(4), counsel’s decision to later use these affidavits to support this claim constitutes a disregard for the spirit of the rule. As the circuit court cogently explained:
In this case, though defense counsel states [Van Poyck] was not represented at the time these affidavits were collected, counsel, as a member of The Florida Bar, still utilized affidavits in crafting the present motion. Though it might not be a technical violation, the actions of [Van Poyck’s] attorney nonetheless constitute a disregard for the spirit of the rule. A lawyer may not simply stick his head in the sand when his client presents juror affidavits collected after a guilty verdict was rendered and simply present them to the Court. Though a lawyer has a duty to zealously advocate for a client, this duty must be tempered by the lawyer’s other professional obligations. A lawyer must always keep in mind the broader duty to the criminal justice system which can never be forsaken in the interest of zealous advocacy-
(Footnote omitted.)
In sum, we conclude that Van Poyck’s motion was untimely and that his reliance on these affidavits represents an improper attempt to use inadmissible evidence to reargue the merits of this Court’s legal determination in Van Poyck V that his non-triggerman status probably would not yield a lesser sentence at a resentencing. Accordingly, we affirm the circuit court’s order summarily denying relief.
It is so ordered.
CANADY, C.J., and PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.

. Specifically, one juror declared that “[i]f [he] had known for a fact that William Van Poyck was not the triggerman, [he] would have recommended to the trial judge that Van Poyck be sentenced to life imprisonment, without the possibility of parole, instead of the death penalty.” Another juror stated that had she "known that Van Poyck did not kill Fred Griffis, there [was] a reasonable probability that [she] would have recommended to the trial judge that Van Poyck-be sentenced to life imprisonment rather than a recommendation for death.” A third juror explained that had she "known for certain that Van Poyck was not the individual who killed Fred Griffis, there [was] at least a reasonable probability that [she] would not have recommended a death sentence for Van Poyck.” The final juror confirmed that she was "not an advocate of the death penalty and would recommend life [without] parole if given the option.”

. We note that the United States Court of Appeals for the Eleventh Circuit recently observed that the "identity of the triggerman was not established at [Van Poyck's] trial or in later proceedings.” Van Poyck VI, 646 F.3d at 867 n. 2.

. Following Van Poyck’s penalty phase, the jury recommended a sentence of death by a vote of eleven to one. The four juror affidavits at issue here are in addition to the one juror who originally voted for a sentence of life imprisonment.