NORTHCUTT, Judge.
In 1995 a grand jury indicted Heather Ciambrone for first-degree felony murder in connection with the death of her son. She was declared incompetent for trial and committed to the Florida State Hospital for treatment. Ciambrone eventually regained her competency, and in 2001, she agreed to plead no contest to second-degree murder in exchange for a sentence of fifty-five years’ imprisonment. Subsequently, she sought to withdraw her plea in a motion filed pursuant to Florida Rule of Criminal Procedure 3.850. She alleged that her plea was involuntary and that counsel had been ineffective in several ways. The circuit court denied her motion after an evidentiary hearing, and she has appealed. We agree with Ciambrone’s contention that her plea was involuntary due to her counsel’s incorrect advice regarding the amount of time she might expect to serve in prison under the gain time rules then in effect. Accordingly, we reverse with directions to permit her to withdraw her plea. The other issues Ci-ambrone raises have no merit and we will not discuss them further.
Ciambrone’s son died in May 1995. Her eligibility for gain time is thus determined under section 944.275(4)(c)(2), Florida Statutes (1993), which states:
For sentences imposed for offenses committed on or after January 1, 1994, for offenses which are, were, or would have been ranked on the offense severity chart in s. 921.0012 in:
[[Image here]]
2. Levels 8, 9, and 10, up to 20 days of incentive gain-time, which shall be credited and applied monthly.
The evidence at the rule 3.850 hearing established that a key consideration in Ci-ambrone’s decision to accept the State’s plea offer was her ability to shorten her imprisonment by earning gain time. Her trial counsel testified that Ciambrone initially rejected the State’s fifty-five-year of *552 fer because she did not want to spend that much time in prison. Counsel telephoned the Department of Corrections to ask how much time an inmate sentenced to fifty-five years’ imprisonment for a crime committed in May 1995 might actually serve. A DOC employee told him that, with gain time, the inmate would serve between sixteen and eighteen years. Counsel relayed this information to Ciambrone. At the same time, he cautioned her that the information might not be accurate, that the award of gain time was strictly the prerogative of the DOC, and that she was not guaranteed a particular sentence.
Ciambrone testified that she had first rejected the State’s offer of fifty-five years’ imprisonment because, at her age, she saw no difference between that sentence and life imprisonment, the penalty she faced if she were convicted after a trial. But when counsel related the DOC employee’s advice that her actual imprisonment might amount to around sixteen years, she began to change her mind. Counsel reminded her that she would receive six years of credit for her pretrial confinement. Thus, Ciambrone believed that she could be eligible for release from prison after about ten years. She testified that this possibility was the most significant factor in her decision to enter the plea agreement.
We note that confusion about the effect of gain time apparently was wide-spread at the time of Ciambrone’s plea. Section 944.275(4), Florida Statutes (2001), set forth many different ways to calculate the time that could be awarded, based on the date of the prisoner’s crime and the severity of the offense. According to testimony at the postconviction hearing, during that period it was not uncommon for defense attorneys to ask the DOC for estimates of the time their clients might serve based on particular sentences. See, e.g., Jones v. State, 834 So.2d 226 (Fla. 2d DCA 2002) (noting that trial counsel testified at the defendant’s rule 3.850 hearing that she had telephoned the DOC to inquire about Jones’s eligibility for gain time). And, in fact, the prosecutor at Ciambrone’s rule 3.850 hearing thought that the information defense counsel had relayed to Ciambrone was accurate. After the initial hearing, the prosecutor contacted the DOC to ask how gain time was calculated. He then moved to reopen the evidentiary hearing so that a DOC representative could explain the rules and how the department computed gain time.
At the reopened hearing, a DOC correctional services administrator confirmed that Ciambrone was eligible for twenty days per month gain time based on a thirty-day month. See § 944.275(4)(c)(2), Fla. Stat. (1993). But this did not mean that she would serve only one-third of the imposed sentence. When a prisoner is first incarcerated, the DOC establishes a tentative release date based on the premise that he or she will serve every day of the sentence. The inmate must serve a month before receiving gain time for that month. The sentence is then reduced by the gain time awarded, and the inmate’s tentative release date is adjusted accordingly. In other words, the inmate earns gain time, and his or her release date is adjusted, month by month as the sentence is served. The DOC administrator determined that someone in Ciambrone’s position who was awarded the maximum gain time allowable would serve roughly sixty percent of the sentence. He confirmed that the department had no discretion to award Ciambrone gain time in an amount that could reduce her sentence to approximately sixteen to eighteen years’ imprisonment. Under the statute then in effect, the minimum sentence Ciambrone might serve if all applicable gain time were awarded was approximately thirty to thirty-three years.
*553 In a thorough order, the postconviction court denied Ciambrone’s motion based on her responses to questions posed during her plea colloquy and on the testimony at the postconviction hearing. These established that Ciambrone had been given no promises when she entered her plea, she knew the award of gain time was in the discretion of the DOC, and she knew there was no guarantee that she would serve only sixteen years in prison. The court found that the record refuted Ciambrone’s claim, citing Johnson v. State, 736 So.2d 713, 714 (Fla. 2d DCA 1999), and Bond v. State, 695 So.2d 778, 779 (Fla. 1st DCA 1997). But neither of those cases involved an allegation that the defendant had been given misinformation about the time she might actually serve in prison. And the factors relied upon by the postconviction court do not refute the fact that Ciam-brone was given this misinformation and relied on it.
Both the Florida Supreme Court and this court have long recognized that a defendant may be entitled to withdraw a plea entered in reliance upon his attorney’s mistaken advice about sentencing or eligibility for gain time. State v. Leroux, 689 So.2d 235, 237 (Fla.1996); see also Cornett v. State, 922 So.2d 297, 298-99 (Fla. 2d DCA 2006); Sepulveda v. State, 909 So.2d 568, 571-72 (Fla. 2d DCA 2005); Trenary v. State, 453 So.2d 1132, 1133-34 (Fla. 2d DCA 1984).
Here, the record established that Ciambrone accepted the State’s plea offer because she believed that with gain time and credit for time served she could be eligible for release in as few as ten years. In fact, this was impossible; her minimum incarceration would be three times as long as she believed. Ciambrone’s trial counsel received the misinformation directly from the DOC and then passed it along to her in good faith. This is not a case involving a claim of ineffective assistance of counsel and thus our analysis is not governed by the standards announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ciambrone’s counsel effectively and thoroughly obtained information about the expected length of her sentence. Although counsel cautioned Ci-ambrone that the information might not be accurate, the record furnishes no basis for concluding that it was unreasonable for her to rely on the word of the very agency charged with administering the gain time statute. The record establishes that Ci-ambrone’s plea was not an informed one. The DOC’s undisputed miscalculation was sufficiently large that Ciambrone’s plea must be treated as involuntary under Florida Rule of Criminal Procedure 3.850(a)(5). She is entitled to withdraw it. See Cornett, 922 So.2d at 299.
We reverse the denial of Ciambrone’s rule 3.850 motion. On remand, the court shall give Ciambrone the opportunity to withdraw her plea. If she does so, neither she nor the State will be bound by the plea agreement. Either side may pursue new plea negotiations or proceed to trial. We note that if Ciambrone is convicted after trial, she risks being sentenced to a longer term of imprisonment than she is presently serving. See Goins v. State, 889 So.2d 918, 919 (Fla. 2d DCA 2004).
Reversed and remanded.
ALTENBERND and CANADY, JJ., Concur.