PER CURIAM.
Heather Ciambrone appeals the circuit court’s summary denial of her motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. Although Ciambrone raised ten claims of ineffective assistance of counsel, we find no merit in three of those claims, the denial of which we affirm without discussion. We reverse the summary denial of the seven remaining claims and remand to the post-conviction court for reconsideration of those claims.
Ciambrone was charged in July 1995 with the first-degree murder of her adopted son, Lucas. She was found incompetent to proceed until March 2000. In 2001, she entered a plea of no contest to second-degree murder and was sentenced to fifty-five years in prison. In 2006, this court reversed the denial of Ciambrone’s rule 3.850 motion, concluding her plea was *230 involuntary due to her counsel’s incorrect advice regarding the amount of time she could expect to serve in prison. Ciam-brone v. State, 938 So.2d 550 (Fla. 2d DCA 2006). Ciambrone withdrew her plea and was tried by jury in May 2007. She was found guilty of first-degree felony murder, with the underlying felony of aggravated child abuse, and was sentenced to life without the possibility of parole. We affirmed Ciambrone’s conviction and sentence on direct appeal. Ciambrone v. State, 38 So.3d 139 (Fla. 2d DCA 2010) (table).
Ciambrone filed a motion under rule 3.800(a), arguing the State alleged the murder was a continuing crime that commenced with the first acts of aggravated child abuse in 1993, so she was entitled to be sentenced to life without the possibility of parole for twenty-five years, the sentence that applied in 1993. We affirmed the postconviction court’s rejection of her argument in Ciambrone v. State, 93 So.3d 1176 (Fla. 2d DCA 2012).
In this proceeding, Ciambrone claims she was denied her constitutional right to the effective assistance of counsel; we address each of her claims in turn.
In order for a defendant to prevail on a claim of ineffective assistance of counsel, a defendant must show deficient performance — that counsel’s representation fell below an objective standard of reasonableness; and prejudice — a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have differed. Strickland v. Washington, 466 U.S. 668, 690-91, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Regarding the reasonableness of representation, the United States Supreme Court has explained that a decision to focus on one potentially reasonable trial strategy is justified by a tactical decision only after a trial attorney conducts a thorough investigation. Sears v. Upton, 561 U.S.-, 130 S.Ct. 3259, 3265, 177 L.Ed.2d 1025 (2010) (per curiam). In assessing prejudice, courts must consider the totality of the evidence presented in postconviction, along with the evidence adduced at trial, to determine whether there is a reasonable probability that the outcome would have differed. Id. at 3266-67.
When, as in this case, a rule 3.850 motion is summarily denied without an evidentiary hearing, we must accept as true the defendant’s factual allegations that are not conclusively refuted by the record. See Peede v. State, 748 So.2d 253, 257 (Fla.1999) (citing Lightboume v. Dug-ger, 549 So.2d 1364, 1365 (Fla.1989)). In reviewing the postconviction court’s summary denial of Ciambrone’s allegations regarding trial counsel’s investigation and preparation for trial, we are constrained by the limited record before us, namely trial counsel’s concession less than a month before trial that “I will not be able to provide even minimally competent representation to Ms. Ciambrone, should her trial begin on May 7.”
In Ground I, Ciambrone alleged her attorney was ineffective for announcing he was ready for trial on January 17, 2007, before he had adequately reviewed the sixty boxes of documents that made up her case file and investigated the witnesses referenced therein. The record before us shows that Ciambrone’s attorney stated he would be ready for trial in March 2007 and objected to the State’s motion to continue the trial on March 23, 2007. But on April 5, 2007, Ciambrone’s attorney moved to continue the trial, which was set for May 7, 2007. He argued he was representing a man in a capital trial in April and “I will not be able to provide even minimally competent representation to Ms. Ciambrone, should her trial begin on May 7.” Ciambrone cites several instances in the record, after trial *231 counsel announced he was ready for trial, where both trial counsel and the State question trial counsel’s ability to review the voluminous documents and prepare for trial in such limited time. Ciambrone further alleged her attorney’s decision to announce he was ready for trial before adequately reviewing her file undermined confidence in the outcome of her trial because the trial court used it as a basis to deny counsel’s later motion for a continuance. As a result, trial counsel was not prepared and did not present exculpatory evidence.
The postconviction court denied this ground: “the record reflects that defense counsel had, in fact, reviewed the case file, met with Defendant, argued with pretrial motions, and subpoenaed several witnesses.” In support of this conclusion, the court referenced pretrial motion hearings attached to the State’s response and attached trial counsel’s motion for a continuance, in which he stated that he “made every possible effort” to be ready for trial by March 26, 2007, but that due to the intervening capital trial, the “complex to the point of overwhelming” nature of the case, and the fact that the State’s expert had not yet provided a report, he could not effectively represent Ciambrone at a May 7, 2007, trial. The court also attached the transcript of the hearing on the motion to continue, in which defense counsel seemingly argues he would have been ready in March, but the intervening continuance, during which a trial date was set on a capital case and the State procured an expert who had not yet issued a report, changed the circumstances.
These attachments do not conclusively refute Ciambrone’s allegations that her attorney announced he was ready for trial before he was, in fact, ready; that State witnesses were not effectively challenged; and that exculpatory evidence was not presented as a result. The attachments show counsel provided assistance, but the attachments do not indicate whether the assistance was reasonably effective, given the facts of this particular case. See Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (explaining that to determine whether a tactical decision is reasonable, the focus should be whether the investigation supporting counsel’s decision was itself reasonable); see also Sears, 130 S.Ct. at 3265 (explaining that although a decision might be reasonable in the abstract, it does not obviate the need to analyze whether counsel’s failure to conduct an adequate investigation before arriving at a particular decision prejudiced the defendant). This court has repeatedly held that an evaluation of strategic decisions generally requires an evidentiary hearing. See McCann v. State, 854 So.2d 788, 790-92 (Fla. 2d DCA 2003) (reversing summary denial where the trial court did not fully address this claim and it was not refuted by attachments to the trial court’s order); Duncan v. State, 776 So.2d 287, 290 n. 2 (Fla. 2d DCA 2000) (“We caution the trial court that a conclusion that counsel’s failure to object was a conscious tactical decision is rarely appropriate for summary denial but should instead be made after an evidentia-ry hearing.” (citing Comfort v. State, 597 So.2d 944 (Fla. 2d DCA 1992))). Based on the record before us, this case is no exception.
Similarly, in Ground II, Ciambrone alleged that trial counsel was ineffective for objecting to the State’s motion for a continuance even though he later admitted he was not ready for trial. As a result, many of the potential witnesses referenced within the sixty boxes of documents that made up her case file did not testify. As with the previous claim, the court did not attach portions of the record which conclu *232 sively refute Ciambrone’s claim, so we cannot affirm the court’s summary denial of this claim. See Chambers v. State, 613 So.2d 118 (Fla. 2d DCA 1993) (reversing summary denial of ineffective assistance of counsel claims where the record was insufficient to support the trial court’s findings).
Ciambrone alleged in Ground III that trial counsel was ineffective for failing to file a motion to preclude the State from asserting a theory of guilt in her trial that was inconsistent with the theory of guilt it argued in Joseph Ciambrone’s trial.[1] Ci-ambrone alleged that the State argued in Joseph’s trial that he inflicted the blunt head trauma that killed her son but then argued at her trial that she inflicted the fatal blow. The court denied this ground, citing the transcript from Mr. Ciambrone’s 1997 trial: “Although the State made a fleeting reference that Mr. Ciambrone ‘may have struck the final blow,’ the State made it clear that ‘it doesn’t matter.’ ” The court then found this argument permissible under State v. Gates, 826 So.2d 1064 (Fla. 2d DCA 2002), because “the State was not inconsistent when it argued in Defendant’s trial that she had committed the final blow.”
Joseph Ciambrone’s 1997 trial transcript does not appear to have been properly made part of the official court record in Heather Ciambrone’s case. Based on the limited record before us, it appears that the postconviction court could not rely on the transcript of Joseph Ciam-brone’s trial to summarily deny relief. See Cintron v. State, 504 So.2d 795, 796 (Fla. 2d DCA 1987) (holding the phrase “files and records” used in rule 3.850 excludes matters outside the official court record). Accordingly, we must reverse summary denial and remand the case for the post-conviction court to attach documents that are properly before it and that conclusively refute Ciambrone’s allegation or to hold an evidentiary hearing on this issue. See Maddry v. State, 649 So.2d 334, 335 (Fla. 1st DCA 1995) (“The affidavit of a single witness, which was not a part of the record at the time the motion was filed, cannot be employed to refute Maddry’s claims of ineffective assistance of counsel, or to obviate the necessity of an evidentiary hearing.”); Havis v. State, 555 So.2d 417, 418 (Fla. 1st DCA 1989) (“The phrase ‘files and records’ does not include factual affidavits presented to the court after the motion has been filed. Rather, this affidavit raises a new factual matter which must be considered at an evidentiary hearing on the motion.”).
In Ground V, Ciambrone alleged her attorney’s failure to call the psychologist who conducted the pre-adoption interviews of the victim and the victim’s sister constituted ineffective assistance. According to Ciambrone, the psychologist was deposed in 1997, and his testimony would have refuted the State’s evidence that the victim was normal before adoption and that Ci-ambrone was responsible for his violent and explosive behavior. She further alleged the psychologist could have impeached the testimony of the victim’s sister regarding the abuse by explaining that the sister’s interpretation of the events was unreliable due to her psychological frailties.
The postconviction court held that Ciambrone was not prejudiced by her attorney’s failure to call this witness because the State acknowledged in closing that the victim “had his problems” and the testimony would have been cumulative to that of *233 other witnesses. Yet the closing argument cited by the court seemingly refers to problems after the psychologist conducted the evaluations and after the victim came to live with Ciambrone. The portions of the record the court attached describe the victim’s violent behavior that occurred after the victim was adopted by Ciambrone. These record attachments do not conclusively refute Ciambrone’s allegations, so we must reverse summary denial on this issue. See Chambers, 613 So.2d at 118; ComfoH v. State, 597 So.2d 944, 945 (Fla. 2d DCA 1992); Johnson v. State, 840 So.2d 369, 370 (Fla. 1st DCA 2003) (reversing summary denial where the trial transcript attached to the record in support of denial did not negate potential benefit of proposed testimony).
As for the court’s conclusion that the psychologist’s testimony “about Brenda’s [the victim’s sister] character for truthfulness in 1992 would have little to no relevance as to her truthfulness in 1997,” the court seems to have misunderstood Ciambrone’s claim. Ciambrone claimed the psychologist would have testified that the victim’s sister’s “interpretation of events” would be unreliable because of her confused thinking, selective listening, high level of social anxiety, and “her attitude towards adults and strangers is that she must please them to avoid any physical or emotional harm.” The sister’s ability to comprehend the events at the time they occurred is a different issue from her ability to recall the events as she perceived them. The court’s attachments do not conclusively refute this claim, so we must reverse. See McCann, 854 So.2d at 791 (reversing summary denial because the trial court did not fully address the claim and it was not refuted by attachments to the trial court’s order).
Ciambrone alleged in Ground VI that her attorney was ineffective for failing to call Dr. Richard Souviron, DDS, as an expert to testify the bite marks on the victim came from a child and not an adult. The court found that Ciambrone was not prejudiced because the State did not argue the bite marks were caused by an adult and conceded the victim “had his problems.” Further, the defense presented witnesses who testified the victim bit himself. However, the portions of the record the court attached contain testimony from four witnesses about incidents that occurred one to three-and-a-half years before the victim died, and the State argued in closing that the victim’s bruises, cuts, abrasions, lacerations, and scars were evidence of aggravated abuse. Based on this record, we cannot conclude these attachments conclusively refute Ciambrone’s claim that evidence the victim hurt himself at or near the time he died would undermine confidence in the outcome. See, e.g., McCann, 854 So.2d at 791; Patterson v. State, 845 So.2d 311, 312 (Fla. 2d DCA 2003).
In Ground VII, Ciambrone alleged her trial counsel was ineffective for not presenting several available witnesses who were found by her plea attorney and who could offer testimony that would have supported Ciambrone’s defense and countered the State’s testimony that she was abusive. In total, Ciambrone proffered testimony of twenty-eight available witnesses who were not called at trial and who would have offered favorable evidence. She categorized the evidence as: twenty-two witnesses, ten of whom are medical professionals, who would have refuted the State’s evidence that the victim did not suffer mental illness or emotional disturbances; fourteen witnesses, at least six of whom are medical professionals, who could have testified regarding the victim’s self-mutilating behavior; eight witnesses who could have refuted the State’s evidence that she *234 hated the victim; twelve witnesses who could have refuted the State’s argument that she was abusive; twenty witnesses who could have testified regarding the victim’s violent and aggressive behavior; and one witness who could have countered the State’s contention that the victim’s sister changed her story favoring Ciambrone to one that supported the State because she feared returning home.
The postconviction court denied this claim, finding all of the proffered testimony would be cumulative, except for that which would refute the State’s witnesses who testified Ciambrone hated the victim. In support of its findings that the testimony would be cumulative, the court attached trial testimony from seven defense witnesses. But the attachments reveal that those witnesses had very limited contact or no contact with the victim in the year or two preceding his death. None of the witnesses had contact with the victim before he lived with Ciambrone. The victim’s sister was the primary witness to the abuse and her story changed, so evidence regarding the sister’s inconsistent versions of Ciambrone’s actions could have possibly been used as impeachment.
Though some of the proffered testimony may very well be cumulative, without an evidentiary hearing it is impossible to conclusively determine that the testimony of twenty-eight witnesses would not have added substance to the defense or challenged the State’s case. And to the extent the court relied on the prosecutor’s admission in closing that the victim was not “normal” to deny this claim, the full context of that statement, with emphasis added, is:
Lucas Ciambrone was only three and a half years old when he went to the Ciambrone home. In fact, in February of 1992, he was three[-]and[-]a[-]half, he had been with them about three months. That’s when he went to the Life Management Center. And the history provided to Dr. Srur was provided by the foster parents, which makes sense because a three-and-a-half-year-old or four-year-old is not going to be able to do that. So they rely a great deal on information provided by parents or foster parents; makes sense.
But it depends on whether that information is accurate. Was it accurate in this case, provided by Ms. Ciambrone and Mr. Ciambrone? They observed behavior, no question, he was acting out, he was having tantrums, but was three[-]and[-]a half[-]years[-]old. There’s no question that Lucas at that time, Pedro, had his problems, plenty of evidence of that.
The court’s attachments do not conclusively refute this claim. See McCann, 854 So.2d at 791; Patterson, 845 So.2d at 312 (reversing where record attachments did not conclusively refute the defendant’s allegation that counsel failed to investigate four witnesses, whose testimony would have impeached the State’s witnesses, refuted the State’s witnesses’ testimony, and shown that other people were involved in the death of the victim); Johnson, 840 So.2d at 370 (holding the trial transcript attached to summary denial did not negate potential benefit of witnesses who would have supported the defendant’s claim of self-defense); Williams v. State, 642 So.2d 67, 69 (Fla. 1st DCA 1994) (reversing summary denial “because the trial court failed to assemble a record from which it could be conclusively determined that Williams is entitled to no relief.”).
The postconviction court found that testimony that Ciambrone did not hate the victim would not have affected the outcome of the trial because the State’s evidence that she hated the victim, evidently from more than one witness, was *235 not a feature of the trial and hate was not an element of the offense. The court did not attach portions of the record to show the testimony was not a feature of the trial, so we cannot affirm summary denial. See, e.g., Hamilton v. State, 979 So.2d 420, 421 (Fla. 2d DCA 2008) (“Because the documents that the court attached to support its denial of Hamilton’s claim did not conclusively refute that claim, we must remand this claim to the postconviction court for an evidentiary hearing or for the attachment of appropriate documents that do refute the claim.”).
Ciambrone’s final claim was that the cumulative effect of her attorney’s deficiencies prejudiced her. The postconviction court denied the claim, finding that because all of the other claims of ineffective assistance of counsel were without merit, this claim also fails. As the record before us does not conclusively refute several of Ciambrone’s allegations of ineffective assistance, this issue should also be reconsidered on remand. See Sears, 130 S.Ct. at 3266-67 (explaining the Strickland prejudice analysis takes into account the evidence adduced in postconviction proceedings that could have been presented at trial, along with the evidence at trial, to assess whether there is a reasonable probability the outcome would have differed).
In conclusion, we affirm the postconviction court’s order as to Grounds IV, VIII, and IX of Ciambrone’s rule 3.850 motion. We reverse the summary denial of Grounds I, II, III, V, VI, VII, and X and remand these claims to the postconviction court.
Upon remand, if the postconviction court should again summarily deny any of these claims, it must attach record support conclusively refuting Ciambrone’s allegations. Otherwise, the court must hold an eviden-tiary hearing.
Affirmed in part, reversed in part, and remanded.
CASANUEVA, SILBERMAN, and CRENSHAW, JJ., Concur.

. Heather Ciambrone and her husband, Joseph Ciambrone, were separately indicted in 1995 for the death of their son, Lucas. Mr. Ciambrone was convicted and sentenced to life in prison in 1997.